In re Application of North Loup River Public Power and Irrigation District. North Loup River Public Power and Irrigation District, appellant, v. Loup River Public Power District et al., appellees.

32 N. W. 2d 869

Filed June 18, 1948. No. 32366.

*Monsky, Grodinsky, Good & Cohen* and *Munn & Norman,* for appellant.

*Blackledge & Sidner, Davis & Vogeltanz, Neighbors & Danielson, Walter & Flory, Barlow Nye, M. J. Buckley, Robert C. Brower, Carroll Thompson, Raymond P. Medlin, John E. Deming,* and *A. F. Alder,* for appellees.

Heard before Simmons, C. J., Paine, Carter, Messmore, Yeager, Chappell, and Wenke, JJ.

Simmons, C. J.

In this case the North Loup River Public Power and Irrigation District filed an application with the Department of Roads and Irrigation seeking an order nunc pro tunc modifying, amending, and correcting its permit No. 2312 granting an appropriation of water for irrigation

purposes. A petition in intervention supporting the application was filed on behalf of the North Loup River Water Users Association. The Loup River Public Power District filed objections, as did a considerable number of junior appropriators of water from the stream involved. Issues were made and a hearing had resulting in an order of the Department of Roads and Irrigation denying the application. Motion for rehearing was filed and denied. On appeal here we sustain the decision.

Herein the North Loup River Public Power and Irrigation District will be referred to as the irrigation district; the Loup River Public Power District as the power district; and the Department of Roads and Irrigation as the department.

This is a companion case to Middle Loup Public Power and Irrigation District v. Loup River Public Power District, *ante* p. 810, 32 N. W. 2d 874. Whenever necessary herein we will refer to the companion case as the Middle Loup case. The two cases were tried together. The bill of exceptions in the Middle Loup case is a copy of the bill in this case.

On September 15, 1932, an application for an appropriation of water from the Loup River for power purposes was filed by Phil R. Hockenberger with the department. It was numbered 2287. A corrected application was filed June 12, 1933, on behalf of the power district.

On March 28, 1933, there was filed on behalf of the irrigation district an application for water for irrigation purposes from the North Loup River, a tributary of the Loup River. It was numbered 2312. A corrected application was filed June 23, 1933.

On September 21, 1933, the irrigation district filed objections to the granting of the power district's application insofar as and to the extent that the granting of said application would prevent, curtail or limit the diversion of water from the North Loup River by the irrigation district under its application.

A hearing was had on December 27, 1933, on the application of the power district and the protest of the irrigation district. At that hearing the irrigation district stated that it had no objection to the granting of the application of the power district provided it be on condition that the appropriation did not prevent, curtail or limit "the diversion of water from the North Loup River" by the irrigation district for irrigation purposes to the extent of 38,000 acre-feet per year at a maximum rate of 260 second-feet, when and if the irrigation district's project was approved by the Federal Emergency Administration of Public Works of the United States, or other governmental authority, and when and if its pending application for water for irrigation was granted. The power district accepted the conditions so stated of the irrigation district subject to the reservation that if the Public Works Administration refused to finance the power district under those conditions, a rehearing could be had and the whole matter again considered.

On February 24, 1934, the application of the power district was granted, and on March 23, 1934, a modified order was entered providing, so far as material here, that "The amount of the appropriation shall not exceed thirty-five hundred (3500) cubic feet per second of time, and shall not; * * * (b) Prevent, curtail or limit the diversion of water from the North Loup River by said North Loup River Public Power and Irrigation District for irrigation purposes to the extent of 38,000 acre feet per year at a maximum rate of 260 second feet, when and if its said project is approved by the Federal Emergency Administration of Public Works of the United States, or other Governmental authority, and when and if its said pending application for water for irrigation is granted." Under this grant the power district, having secured the funds, completed its project and it was put into operation in 1937.

On August 25, 1936, the power district, the irrigation district, and the Middle Loup Public Power and Irri-

gation District entered into an agreement to the effect that for a period of three years the irrigation districts would allow a fixed minimum of water to pass their lowest headgates; that any and all water grants to the irrigation districts should "strictly conform to the provisions of the grant of water rights" to the power district, dated March 23, 1934; and that the power district, and each irrigation district, as to the other, agreed not to object to nor interfere in the granting of the then pending applications of the irrigation districts for water rights. The agreement by express terms expired three years after its date.

On September 15, 1936, the department granted the application of the irrigation district subject to the conditions material here that:

"6th. The prior right of all persons who, by compliance with the laws of the State of Nebraska, have acquired a right to the use of the waters in Water Division Number 2-A must not be interfered with by this appropriation, with the exception of Application 2287 for power, which by stipulation, is subsequent in priority to Application 2312.

"7th. The amount of the appropriation shall not exceed — 260.00 — cubic feet per second of time; neither shall it exceed the capacity of said ditch or canal, nor the least amount of water that experience may hereafter indicate as necessary for the production of crops in the exercise of good husbandry; and, further, said appropriation, under any circumstances, shall be limited to one-seventieth (1-70) of a cubic foot per second of time, for each acre of land to which water is actually and usefully applied on or before to one-acre foot for each acre of land to which water is actually and usefully applied on or before October 1, 1944."

Under this grant the irrigation district, having secured the funds, completed its project and it was put in operation in the fall of 1938, and began delivering water in 1939.

It does not appear that the irrigation district was dissatisfied with this order at the time it was entered and did not appeal from it, and it has become final. (See Loup River Public Power District v. North Loup River Public Power and Irrigation District, 142 Neb. 141, 5 N. W. 2d 240.) It is this order which the irrigation district now seeks to have modified, amended, or corrected nunc pro tunc, so as to provide a limitation of one second-foot to each seventy acres irrigated, and to allow a sufficient total seasonal headgate diversion to deliver one acre-foot per acre per season on the land, with a maximum of 260 second-feet and 38,000 acre-feet, limited only in relation to the power district's appropriation, and with permission to take additional water above 38,000 acre-feet after the priority of the power district is satisfied and within the above limitations for the land actually irrigated.

It appears from the evidence that at the time the irrigation district was being promoted it was anticipated that it would furnish water to 38,000 acres of land. At the time of the hearing herein there were actually under irrigation about 22,000 acres, with a possible 5,000 acres more subject to being so irrigated.

The irrigation district here alleges in the application that the limitation of one acre-foot to each acre of land was inadvertent, ill-advised, and contrary to the intention of the parties to the stipulation of December 27, 1933, and contrary to the intentions of the department; that the limitation should have been to the diversion of 38,000 acre-feet at a maximum rate of 260 second-feet, a maximum of one second-foot for each seventy acres and a maximum of three acre-feet per acre per year; that it was intended that the one acre-foot per acre was to be measured at the land to which should be added a sufficient amount of water at the point of diversion to enable the irrigation district to deliver the one acre-foot for each acre actually irrigated; and that in the light of our decision in Loup River Public Power District

v. North Loup River Public Power and Irrigation District, *supra,* the inadvertent and unintentional omission from its permit of a specific provision as to the place where the water was to be measured casts a cloud upon its appropriation, and the amount of water it may divert has been rendered uncertain and subject to controversy, and that because of the inadvertence the order should be corrected and modified so as to make allowances for losses in transportation.

The power of the department to enter an order nunc pro tunc, to the same extent as a court may, is not disputed here. The question is, is the irigation district entitled to a nunc pro tunc order.

We have held and consistently followed the rule that the authority of a court to enter a judgment nunc pro tunc is an inherent power, and that "If a judgment in fact was rendered, if an order in fact was made, and such judgment or order not recorded, then the court, at any time afterwards, in a proper proceeding and upon a proper showing, is invested with the power to render nunc pro tunc such judgment or make such order." Van Etten v. Test, 49 Neb. 725, 68 N. W. 1023. See, also, Hyde v. Michelson, 52 Neb. 680, 72 N. W. 1035, 66 Am. S. R. 533; Gund & Co. v. Horrigan, 53 Neb. 794, 74 N. W. 257; Clark & Leonard Investment Co. v. Rich, 81 Neb. 321, 115 N. W. 1084, 15 L. R. A. N. S. 682.

In Central West Investment Co. v. Barker Co., 79 Neb. 47, 112 N. W. 291, we held that before the rule may be applied it must appear that there was a judgment or order announced which the court intended as the disposition of the issue considered.

In Calloway v. Doty, 108 Neb. 319, 188 N. W. 104, we held: "It must be borne in mind that the proper function of a nunc pro tunc order is not for the purpose of correcting some affirmative action of the court which ought to have been taken, but its true purpose is to correct the record which has been made, so that it will truly record the action really had, but which through

some inadvertence or mistake has not been truly recorded. In other words, it is an order to make the record speak the truth." This holding was restated and followed in the recent case of O'Grady v. Volcheck, 148 Neb. 431, 27 N. W. 2d 689.

We have also held that such a judgment must conform to and be no broader in its terms than the judgment actually rendered. Phelps v. Wolff, 74 Neb. 44, 103 N. W. 1062.

Mr. Tilley was the State Engineer at the time the irrigation district's appropriation was granted on September 15, 1936. He received from the supervising project engineer of the Public Works Administration an oral request for an interpretation of the conditions and limitations of paragraph seven of the irrigation district's appropriation. At that time the project engineer was reviewing the application of the irrigation district for funds. Mr. Tilley testified that the interpretation "might have considerable bearing on whether the district got funds" or not; that there was "quite a little pressure to get government funds"; and that he "didn't try to be unfavorable" to the irrigation district. He replied under date of February 24, 1937, that the department "recognizes the right of the water users under Application 2312 to receive a maximum of one acre-foot of water measured at the land * * *." Mr. Tilley further testified that the failure to provide for three acre-feet diversion at the river in granting the irrigation district's appropriation "must have been an oversight, I presume. * * * there may have been something left out that should have been put in." He "wouldn't attempt to say now" what the order "should have contained"; "if they had been more definite on that one point it would have been a good thing"; "we were in doubt" as to the meaning of the order when the interpretation was made and he was testifying only as to "what I thought I was doing then"; and that the department intended that the irrigation district could divert up to three acre-feet per

acre but not to exceed one acre-foot actually delivered at the land.

Mr. Willis, chief of the Bureau of Irrigation, Water Power and Drainage in the department, testified that he did not recall what part he had in preparing the irrigation district's permit. However, on February 19, 1937, he sent a telegram to the engineer-manager of the irrigation district advising that it was his interpretation of the permit that the district could divert a maximum of 2.9 acre-feet per acre per year if needed to apply a total of one acre-foot per year to each acre irrigated. On August 30, 1939, he wrote the county agent of Valley County that the irrigation district had a right to divert water until the land described in the permit had received one acre-foot per acre for each calendar year, measured at the land. He proceeded to administer the water of the river on that basis so far as the irrigation district was concerned until our decision in Loup River Public Power District v. North Loup River Public Power and Irrigation District, *supra,* was filed.

Under date of July 30, 1941, the then State Engineer advised attorneys for the power district that the department would permit the irrigation district to divert sufficient water to deliver one acre-foot on each acre of land, until instructed to the contrary by the court or the Attorney General.

It is obvious that the evidence of Mr. Tilley and Mr. Willis, who had most to do with the granting of the order involved, does not reach back to nor establish that the order entered was not the order determined upon and made.

Further the testimony of Mr. Willis is that the department always measured the appropriation of water at the headgate; that the department never granted any permits with the understanding that the water was to be measured at the land; that it had no means of measuring water at the land; that the only appropriations ever undertaken to be administered at the land were

those involved in this action and in the Middle Loup case; that only in these two cases had the department ever undertaken to interpret a permit to mean water measured at the land, and in fact he never so interpreted this order but administratively had undertaken to determine how much must be diverted at the headgate to get one acre-foot at the land. He further testified that as "interpreted" there was no way for anyone to show from the order the amount of water that might be diverted from the stream. He further testified that in administering these appropriations he never gave much consideration to the provision in the power district's permit, based on the stipulation, referring to the "diversion of water from the North Loup River" by the irrigation district "for irrigation purposes."

By way of completing a summary of the evidence it should be stated that on September 7, 1939, the supervising engineer of the power district wrote the manager of the irrigation district a letter in which he recited that "the twelve inches of water is to be measured at the land." There is no showing that this was written with the approval of the power district. He testified that he "assumed" that proposition in writing the letter.

There is evidence in this record that would sustain a finding, based on the experience had in actual irrigation, that one acre-foot of water on the land is necessary for good husbandry in irrigated crops in this irrigation district and that losses in transportation would be about 60 percent of the total water diverted at the headgate.

On behalf of the water users there is evidence that the letter of Mr. Willis to the county agent was circularized to water users and that they signed contracts and made improvements based on the statements contained in that letter.

We have undertaken to summarize all the evidence offered to sustain the application of the irrigation district. It does not sustain their contention that they are entitled to the nunc pro tunc order sought.

It is apparent from this record that the grant of the appropriation of water to the power district was made in accord with the stipulation made by the power district and the irrigation district. It is also apparent that the grant of the appropriation to the irrigation district was made in accord with the same stipulation. Those grants as to language and content were not questioned by any interested parties in direct proceedings before the department. Both districts began to operate in accord with them.

It likewise is apparent that the order entered by the department on the irrigation district's application for water was in truth and in fact the determination then made, and that the order entered correctly states that determination. It is likewise apparent that the irrigation district now seeks an amendment of the order so as to have it recite that which, in retrospect, it now deems should have been made. The effect of the modification sought would be to amend the stipulation of December 27, 1933, into which the irrigation district voluntarily entered. Obviously that cannot be done by a nunc pro tunc order. Events occurring and conditions arising subsequent to the order involved do not justify a modification of the order nunc pro tunc. To grant the application would be to broaden the judgment actually made. That the department is not permitted to do, even granting to it all the powers of a court in a nunc pro tunc proceeding.

We affirm the determination of the department denying the application.

AFFIRMED.

YEAGER, J., dissenting.

I dissent herein in the substance and for the reasons set forth in In re Application of Middle Loup Public Power and Irrigation District, Middle Loup Public Power and Irrigation District v. Loup River Public Power District, *ante* p. 810, 32 N. W. 2d 874.

PAINE, J., concurs in the dissent.