786 P.2d 1214

Larry KINCAID, Claimant–Appellant,

v.

WEK DRILLING CO., INC., Employers Casualty Insurance Company, Employer and Insurance Carrier, and Fabian Chavez, Superintendent of Insurance for the State of New Mexico, and the New Mexico Subsequent Injury Fund, Respondents–Appellees.

No. 11124.

Court of Appeals of New Mexico.

Dec. 28, 1989.

Michael E. Dargel, McCormick, Forbes, Caraway & Tabor, Carlsbad, for respondents-appellees WEK Drilling Co. and Employers Cas. Ins. Co.

Thomas D. Haines, Jr., Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for respondents-appellees Fabian Chavez and New Mexico Subsequent Injury Fund.

## OPINION

MINZNER, Judge.

Claimant Larry Kincaid (Kincaid) appeals from a compensation order awarding him benefits for 10% permanent partial disability, contending that he should have been awarded benefits for permanent total disability. Kincaid was injured on April 7, 1987. Due to the date of the accident, this case arises under transient provisions of the Workmen's Compensation Act. *See* NMSA 1978, §§ 52–1–1 to ´–68 (Orig.Pamp. & Cum.Supp.1986) (Interim Act). This appeal is another in a series of cases arising under the Interim Act and presenting this court with a question concerning the meaning of permanent total disability under that Act. *See Varela v. Arizona Pub. Serv.,* 109 N.M. 306, 784 P.2d 1049 (Ct.App.1989) *cert. applied for* December 4, 1989; *Barela v. Midcon of N.M., Inc.,* 109 N.M. 360, 785 P.2d 271 (Ct.App.1989) *cert. applied for* November 27, 1989. In this case, the dispositive issue is whether the hearing officer properly applied the definition of "comparable wage" under Section 52–1–24(A). We affirm.

*Background.*

At the time of his injury, Kincaid was employed as a floorhand digging a trench line by respondent WEK Drilling Co. (WEK). After his injury, he was temporarily totally disabled until October 1, 1987. The parties stipulated at trial that Kincaid's maximum compensation rate was $211.69 a week. After reaching maximum medical improvement, he worked at a convenience store in Roswell, but ultimately he

Kevin J. Hanratty, Kevin J. Hanratty, P.C., Artesia, for claimant-appellant.

obtained a position in Alamogordo as the store manager at Broadway Fashions.

Prior to his injury at WEK, Kincaid suffered another work-related injury to his lower back, while employed as a carpenter in Missouri. Kincaid was compensated $10,000 for this disability, through a claim filed with the state of Missouri. At the time of this injury, Kincaid's weekly wage was $240.00.

The hearing officer found that as a result of these two injuries, Kincaid had sustained a permanent body impairment of 10%. Although Kincaid sought benefits for total disability, the hearing officer concluded that Kincaid was entitled to a compensation rate of $21.17 for 536 weeks, to be apportioned 90% to WEK and 10% to the New Mexico Subsequent Injury Fund. There was no dispute as to medical bills.

Kincaid is currently employed as the store manager of Broadway Fashions in Alamogordo, New Mexico. He makes approximately $213.46 per week. In addition, he is entitled to 10% of the gross profits of the store and to a 30% discount on all items purchased at Broadway Fashions.

WEK contends on appeal that Kincaid failed to preserve the issues he has raised. Thus, we first address the question of preservation.

*Preservation.*

■ On appeal Kincaid has briefed three issues: (1) the hearing officer erred in failing to make findings of fact on the issue of whether Kincaid is able to earn comparable wages or salary; (2) the hearing officer erred in considering certain benefits in calculating Kincaid's future earning capacity; and (3) the hearing officer erred in failing to determine that Kincaid was wholly unable to earn comparable wages or salary. We address the question of preservation with respect to each of these issues.

WEK argues that Kincaid failed to preserve his first issue because he did not request a specific finding as to comparable wages. *See generally Goldie v. Yaker*, 78 N.M. 485, 432 P.2d 841 (1967) (by failing to request findings concerning stock's actual or represented value, or the difference between the two values, plaintiff waived findings as to this ultimate issue). It is true that Kincaid did not request a finding of fact that he was unable to earn comparable wages. Nevertheless, he requested findings that his pre-injury wage was $393.12 and that he is able to earn only 54% of his prior salary. In addition, he requested conclusions of law that he is wholly unable to earn comparable wages and that he therefore is entitled to total disability.

The supreme court has noted that in many instances the ultimate facts to be properly found by a trial court are indistinguishable from and identical to the conclusions of law that are necessary to support the judgment. *See Goodwin v. Travis*, 58 N.M. 465, 272 P.2d 672 (1954). This court has observed that occasional intermixture of matters of fact and conclusions of law does not constitute error where the court can see enough, upon a fair construction, to justify the judgment of the court. *Gough v. Famariss Oil & Ref. Co.*, 83 N.M. 710, 496 P.2d 1106 (Ct.App.1972).

In this case, the question is whether Kincaid alerted the hearing officer to the issue he seeks to raise on appeal. *See* SCRA 1986, 12–216(A). Taking Kincaid's requested findings and conclusions as a whole, we think it should have been clear to the hearing officer that Kincaid was requesting a determination on the issue of whether he is unable to earn comparable wages. Thus, we conclude Kincaid's first issue was preserved for appellate review.

WEK also argues that Kincaid failed to specifically challenge the hearing officer's findings in his brief-in-chief. As noted by WEK, a generalized attack is not sufficient on appeal. SCRA 1986, 12–213(A)(3). Rule 12–213(A)(3) states that the argument must set forth "a specific attack on any finding, or such finding shall be deemed conclusive."

Rule 12–213 also states that a contention that a finding of fact is not supported by

substantial evidence is deemed waived unless the party includes in the summary of proceedings the substance of the evidence bearing upon the proposition. Case law interprets this section of the rule to mean that a party must set forth *all* evidence bearing upon the proposition of fact. *Blake v. Blake*, 102 N.M. 354, 695 P.2d 838 (Ct.App.1985). In his summary of proceedings, Kincaid does not comply with this rule. Failure to comply with this section of the rule precludes Kincaid from seeking a review of the sufficiency of the evidence to support the findings. However, his arguments on appeal are primarily legal arguments. Thus, we address his second and third issues as well.

Kincaid's brief initially characterizes the first issue as a claim that the hearing officer's decision is not supported by the facts, and his arguments concerning the second and third issues are at times indistinguishable from arguments that the hearing officer's findings are not supported by substantial evidence. However, at oral argument it became clear that the essential dispute among the parties is whether the hearing officer properly applied Section 52–1–24(A). WEK's brief in fact concedes that Kincaid's brief raises a "legal issue," which is "the definition of permanent total disability under the Interim Workmen's Compensation Act." Thus, we have reframed Kincaid's three appellate issues and will address (1) the definition of permanent total disability under the Interim Act, and (2) whether the hearing officer's findings and conclusions are sufficient to support his decision.

*The Definition of Permanent Total Disability Under the Interim Act.*

Section 52–1–24(A) of the Interim Act provides as follows:

As used in the Workmen's Compensation Act, "permanent total disability" means a permanent physical impairment to a workman resulting by reason of an accidental injury arising out of and in the course of employment whereby a work-man is wholly unable to earn comparable wages or salary. In determining whether a workman is able to earn comparable wages and salary, the hearing officer shall consider the benefits the worker is entitled to receive under Section 52–1–43 NMSA 1978. If the benefits to which the workman is entitled under Section 52–1–43 NMSA 1978 and the wage he is able to earn after the date of maximum medical improvement and vocational rehabilitation as provided in this act is comparable to the wage the worker was earning when he was injured, he shall be deemed to be able to earn comparable wages or salary. "Physical impairment" does not include impairment of function due solely to psychological or emotional conditions, including mental stress. [Citation omitted.]

WEK has argued that with the Interim Act the legislature has returned to the impairment of earning capacity theory in providing a definition for permanent total disability. *See generally Varela v. Arizona Pub. Serv.* WEK contends that the legislature intended a three-part inquiry. First, the hearing officer is to compare the worker's pre-injury earnings with his or her post-injury earnings. Second, the hearing officer is to consider the factual question of whether the figures included in the initial comparison are reliable and whether the comparison produces "an honest approximation of claimant's probable future earning capacity." *Cf.* 2 A. Larson, *The Law of Workmen's Compensation* § 60.11(d) at 10–614 (1989) (reviewing the catch-all section of the wage-basis formula); *see* § 52–1–20(C). If the hearing officer determines the numbers are unreliable and unrepresentative, then the hearing officer must determine from all of the available evidence what impact the injury has had on the worker's true earning capacity in order to determine the difference resulting from the injury.

This court has accepted WEK's argument that Section 52–1–24(A) is based on an impairment of earning power theory.

*See Varela v. Arizona Pub. Serv.* The legislature initially describes permanent total disability in the first sentence of that section as "a permanent physical impairment * * * whereby a workman is wholly unable to earn comparable wages or salary." § 52–1–24(A). The phrase "wholly unable to earn" describes an impairment of earning capacity.

This court has previously interpreted the second sentence of the section as requiring the hearing officer to consider the benefits to which a worker is entitled under Section 52–1–25, for permanent partial disability. *See Barela v. Midcon of N.M., Inc.* The same interpretation affects the third sentence.

Both respondents contend that in interpreting the third sentence, the hearing officer is not confined to the worker's average weekly wage in considering his or her pre-injury earnings. WEK argues that the phrase "the wage the worker was earning when he was injured" does not restrict the hearing officer to the average weekly wage, if there is evidence that wage is not representative of the worker's usual earnings. WEK notes that the evidence showed Kincaid's earnings as a carpenter or in retail were more representative of his pre-injury capacity than his work in the oilfields. Respondent New Mexico Subsequent Injury Fund has argued, similarly, that the average weekly wage Kincaid was earning at the time of his injury should be discounted to reflect the fact that he was not employed in the oilfields during the winter months.

We recognize that we suggested in *Barela* that the Interim Act presented a unique interpretative difficulty. There, we noted that the legislature had intended "to establish certain benchmarks and to leave to the courts the task of 'rationalizing' the provisions of the statute." Slip op. at 6. Nevertheless, we are not persuaded that the language used by the legislature in the third sentence of Section 52–1–24(A) to define comparable wage presents the same interpretative difficulties this court faced in *Barela* and *Varela.*

Here, the legislature clearly required a comparison between the wage the worker was earning when he or she was injured and the wage he or she "is able to earn after the date of maximum medical improvement." This language expressly mandates comparison between an actual wage and a potential wage. We see no reason to interpret the language contrary to its ordinary sense. Thus, we equate, as we believe the legislature intended us to do, the phrase "the wage the worker was earning when he was injured" with "the average weekly wage" calculated under Section 52–1–20.

The other half of the comparison the hearing officer must make is supplied by evidence as to the worker's earning capacity after maximum medical improvement. The phrase used by the legislature in Section 52–1–24 indicates an intent to permit the fact finder to consider a wide variety of evidence. We agree with WEK that the phrase "the wage he is able to earn" does not necessarily mean the wage a worker is earning at the time of the hearing but rather depends upon the hearing officer's factual determination of a worker's capacity. *See generally* 2 A. Larson, *supra,* § 57.21(a) (earning capacity distinguished from actual earnings). This determination may be based not only on actual post-injury earnings but all other relevant evidence.

Kincaid contends the hearing officer erred in finding that Kincaid expects to earn a bonus of 10% of the gross profits of the store, which could be between $2,000 and $3,000, and also that Kincaid is entitled to a 30% discount on items purchased in the store. He claims that neither of the above should be considered as wages for the purpose of computing comparable wages. Kincaid argues that the profits and the discount are gratuitous and speculative. Kincaid cites *Gilliland v. Hanging Tree, Inc.,* 92 N.M. 23, 582 P.2d 400 (Ct.App. 1978), for the proposition that speculative future wages should not be considered in

determining average weekly wage. However, in the *Gilliland* case, the worker was not earning any wage at all, and future wages were dependent on improvement of the business to the "satisfaction" of the owner; the case is therefore distinguishable.

As indicated earlier, Kincaid did not challenge the findings made by the hearing officer as not supported by substantial evidence. The only appellate issue he has preserved is whether the hearing officer erred as a matter of law in considering the percentage of profits and the clothing discount. In our view, it was not error to consider either element in attempting to determine earning capacity because each element is relevant in identifying the salary Kincaid could command. A percentage of profits and a clothing discount both are intended to supplement wages and provide an incentive for the worker to take a particular position. Depending on the evidence, neither factor necessarily involves speculation.

■ WEK has argued that the legislature did not intend to adopt an actual wage-loss comparison because it did not adopt periods of time before and after injury within which actual wages are to be calculated for purposes of comparison. We agree that the legislature has provided a definition of permanent total disability within Section 52–1–24(A), which compares actual earnings before injury with earning capacity after injury. To the extent Kincaid has argued for an actual wage-loss comparison, that argument is rejected. Although the statutory definition is based generally on an impairment of earning power theory, it expressly requires a comparison between actual wages at the time of injury and post-injury earning capacity. It provides a clear beginning point for the hearing officer's analysis but requires comparison with a more theoretical element. The theoretical element affords the hearing officer flexibility. Apparently, degree of disability is calculated under most workers' compensation acts by comparing actual earnings with earning capacity after the injury. *See* 2 A. Larson, *supra*, § 57.21(a). Consequently, we see no reason to read words in or out of the statute. *Cf. Barela v. Midcon of N.M., Inc.* Because the choice the legislature has made seems clear, it is not a situation we are prepared to remedy. *See Varos v. Union Oil Co. of Cal.*, 101 N.M. 713, 688 P.2d 31 (Ct.App. 1984).

*Sufficiency of the Findings and Conclusions.*

■ Findings of fact entered by a district court judge shall consist only of such ultimate facts as are necessary to determine the issues of a case, as distinguished from evidentiary facts supporting them. *See* SCRA 1986, 1–052(B)(1)(b). We have held that the same principle presently applies to hearing officers within the Workers' Compensation Division. *See Griego v. Bag 'N Save Food Emporium*, 109 N.M. 287, 784 P.2d 1030 (Ct.App.1989), *certs. applied for* November 29 and December 15, 1989.

Generally, it is sufficient that a finding is made that a worker is, to a stated percentage, partially or totally permanently disabled. *McCleskey v. N.C. Ribble Co.*, 80 N.M. 345, 455 P.2d 849 (Ct.App.1969); *Marcus v. Cortese*, 98 N.M. 414, 649 P.2d 482 (Ct.App.1982). Under the Interim Act, however, the hearing officer first must make a determination of permanent partial disability before making a determination of permanent total disability. *See Varela v. Arizona Pub. Serv.* Consequently, under the Interim Act, a finding that a worker is to a stated percentage permanently partially disabled does not necessarily resolve the issue of whether that worker is entitled to benefits for permanent total disability. *Id.*

Kincaid requested a determination that he was not able to earn a comparable wage, and his findings and conclusions were rejected. One who seeks relief under a statute has the burden of proving that he comes within its terms. *Baca v. Bueno Foods*, 108 N.M. 98, 766 P.2d 1332 (Ct.App.

1988). "[W]here a party has the burden of proof on an issue and requests findings on that issue, which are refused, the legal effect of the refusal of the requested findings is a finding against that party." *H.T. Coker Constr. Co. v. Whitfield Transp., Inc.*, 85 N.M. 802, 804, 518 P.2d 782, 784 (Ct.App.1974) (*quoting Tabet Lumber Co. v. Chalamidas*, 83 N.M. 172, 175, 489 P.2d 885, 888 (Ct.App.1971)). Another rule concerning findings is that, when properly requested, the trial court must find one way or another on a disputed issue that is material. *See id.* (*citing Sanchez v. Sanchez*, 84 N.M. 498, 505 P.2d 443 (1973) as well as *Tabet*). Kincaid relies on the second rule, but his reliance is misplaced. *Cf. id.* (findings are to be liberally construed in support of a judgment, and such findings are sufficient if a fair consideration of all of them, taken together, justifies the judgment).

In the case of uncertain, doubtful, or ambiguous findings, an appellate court is bound to indulge every presumption to sustain the judgment. *Ledbetter v. Webb*, 103 N.M. 597, 711 P.2d 874 (1985). Where the denial of a requested finding and the adoption of others will support a decision that in fact the trial court has ruled on all material issues, the case need not be remanded for additional findings. We conclude that the hearing officer did not err in failing to make a finding as to comparable wages, if the findings and conclusions he made indicate that he ruled against Kincaid on the issue of permanent total disability.

The hearing officer found that Kincaid's maximum compensation rate, if totally disabled, would be $211.69. Because the compensation rate was $211.69, we know that Kincaid's average weekly wage at the time he was injured was $317.85.

The hearing officer found that Kincaid presently earns $213.46 per week and expects to earn 10% of the gross profits, which may result in a $2,000 to $3,000 bonus. The hearing officer also found that Kincaid has past job experience working in the retail trade and by his own admission will be very successful in the retail clothing store business. The hearing officer made no finding as to the value of the clothing discount, but he noted that Kincaid was entitled to it.

These findings establish that the hearing officer considered important factors that enter into a determination of whether Kincaid was capable of earning a comparable wage. They also provide a basis for the hearing officer to find that Kincaid had not satisfied his burden of proving that he could not earn a comparable wage. To show this, we make an elementary computation. Kincaid did not convince the hearing officer that his bonus would be less than $3,000, which would be approximately $60 per week. Added to Kincaid's base wage, Kincaid would earn the equivalent of $273.46 a week, or more than 85% of his actual pre-injury wage. Particularly in light of Kincaid's right to a clothing discount—whose value was not established by Kincaid—and Kincaid's bright prospects in the retail clothing business, the hearing officer could readily have been unconvinced that Kincaid was incapable of earning a comparable wage. Thus, we conclude that the hearing officer ruled on the issue of whether Kincaid was able to earn a comparable wage and on that issue ruled in respondents' favor.

*Conclusion.*

The hearing officer's findings and conclusions resolved the question of whether Kincaid is capable of earning a comparable wage under Section 52–1–24(A). They resolved the question against him. Thus, we affirm the compensation order awarding him benefits for permanent partial disability.

IT IS SO ORDERED.

BIVINS, C.J., and HARTZ, J., concur.