845 P.2d 849

Colleen J. **MALOOF**, Protestant–Appellant,

v.

**SAN JUAN COUNTY VALUATION PROTESTS BOARD; San Juan County Commissioners; and Marion Farnsworth, San Juan County Assessor, Respondents–Appellees.**

No. 12876.

Court of Appeals of New Mexico.

Dec. 4, 1992.

Shannon L. Donahue, Albuquerque, for protestant-appellant.

B.J. Baggett, San Juan County Atty., Aztec, for respondents-appellees San Juan County Comm'rs and Marion Farnsworth, County Assessor.

Gary D. Eisenberg, Glen A. Krahenbuhl, The Poole Law Firm, P.C., Albuquerque, for respondent-appellee San Juan County Valuation Protests Bd.

## Opinion

DONNELLY, Judge.

Protestant, Colleen J. Maloof, appeals an order of the San Juan County Valuation Protests Board (Board) affirming the ad valorem tax assessment rendered by the San Juan County Assessor, Marion Farnsworth (Assessor), on the Best Western Inn (Inn) in Farmington. Three issues are raised on appeal: (1) whether the Board erred in issuing a nunc pro tunc order modifying its prior order of valuation; (2) whether the ad valorem tax valuation of the Inn is supported by substantial evidence; and (3) whether the method utilized by the Assessor to determine the value of the Inn was contrary to law. For the reasons discussed herein, we affirm.

## Facts

The Assessor valued the Inn owned by Protestant, together with the personal property located thereon, in the amount of $3,195,873 for 1990 ad valorem tax purposes. The assessment included a valuation of $292,854 for the land, $2,363,766 for improvements, and $539,253 for the value of the personal property situated thereon. Protestant challenged the valuation at an administrative hearing and contended that the Board erred in refusing to adopt her valuation of $1,982,030 for the land and improvements.

Protestant and the Assessor presented disparate testimony concerning the valuation of the Inn. Protestant relied upon the testimony of Victor Lioce, a certified appraiser. Lioce gave opinion testimony valuing the Inn utilizing both the market value and income approaches. He testified that in his opinion the assessment rendered by the Assessor was erroneously computed and was based in part upon factors which should have been omitted from valuation under the market value approach. The Assessor presented testimony valuing the Inn for ad valorem tax purposes under the market value approach, income approach, and cost approach; however, the Assessor based his valuation of the Inn on the market value method of assessment. At the administrative hearing, the parties stipulated that the value of the personal property was $539,253.

Following the protest hearing, the Board entered an order on December 6, 1990, determining that the Assessor's valuation of the land and improvements was factually incorrect and concluded that the proper ad valorem tax valuation of the Inn, including the land and improvements but not the personal property, should be $2,219,357. The Board also adopted written findings of fact and conclusions of law determining, among other things, that "Protestant [had] presented competent evidence which met and overcame the statutory presumption of correctness"; that the Assessor "used an incorrect actual 1988 gross income figure for the [p]roperty"; that Protestant had also utilized incorrect data in calculating the value of the property; and that the "proper total valuation of the subject property is $2,758,610 . . ., less personal property of $539,253, [resulting in a] valuation of the underlying real property and improvements of $2,219,357.00."

On January 9, 1991, following the entry of the Board's first order, it entered a nunc pro tunc order, with the Chairperson dissenting, vacating its prior order and adopting a different valuation of the Inn. The new order recited that its previous order had not accurately recorded its decision concerning the valuation of the Inn; that the evidence presented by Protestant had

failed to show that the Assessor's valuation for the property was incorrect; and that Protestant's tax protest should be denied. The Board's second order also recited that at the conclusion of the protest hearing it had taken the issue of valuation under advisement and:

> At the request of the Board, the Board's attorneys prepared a proposed Order and proposed Findings of Fact and Conclusions of Law. Due to miscommunications between the Board's Chairperson, the Board members, and the Board's attorneys, the proposed Order (with proposed Findings of Fact and Conclusions of Law attached thereto) was signed by the Chairperson and mailed to the respective parties to the protest on December 6, 1990.

The new order approved its amended findings of fact and conclusions of law and determined that Protestant had failed to overcome the presumption of correctness of the Assessor's valuation, and that no change should be made in the Assessor's valuation of Protestant's property.

### Validity of Nunc Pro Tunc Order

■ Protestant argues that the Board was without authority to vacate its first order and, on January 9, 1991, to enter its nunc pro tunc order, together with its new findings of fact and conclusions of law, changing its initial valuation of the Inn. We disagree.

■ Courts which have considered the question of whether an administrative agency, or quasi-judicial body, is invested with the power to issue a nunc pro tunc order or decision have generally upheld the authority of such agency to enter nunc pro tunc orders in appropriate cases, where intervening rights of the parties have not been prejudiced. *See In re Appeal of Angle,* 713 P.2d 962 (Kan.Ct.App.1986); *Almeida Bus Lines v. Department of Pub. Utils.,* 348 Mass. 331, 203 N.E.2d 556 (1965); *In re Application of Andrews,* 175 Neb. 222, 121 N.W.2d 32 (1963); *In re North Loup River Pub. Power & Irrigation Dist.,* 149 Neb. 823, 32 N.W.2d 869

(1948); *Railroad Comm'n v. McClain*, 356 S.W.2d 330 (Tex.Civ.App.1962). *But see Oliphant v. Carthage Bank*, 224 Miss. 386, 80 So.2d 63 (1955).

The general rule concerning the issuance of nunc pro tunc orders by administrative agencies is succinctly stated in 73A C.J.S. *Public Administrative Law and Procedure* Section 147, at 116, 119 (1983), which notes:

> The rules relating to nunc pro tunc orders generally have been held to apply to the orders and decisions of administrative or quasi-judicial commissions. So, ordinarily, agencies have the power to enter nunc pro tunc orders in appropriate cases, provided no intervening rights are prejudiced; where it can be seen by reference to a record what was intended to be entered but by inadvertence or mistake had not been, it may be put to record as of the date it should have been done by a nunc pro tunc order. [Footnotes omitted.]

The function of the nunc pro tunc order entered here was to accurately record the actual ruling of the Board and to correct its previous order. Although a nunc pro tunc order cannot properly be utilized to set forth matters which did not occur, the order may properly recite what was entered incorrectly, or was improperly or inadvertently omitted. *See Hair v. Oklahoma Corp. Comm'n*, 740 P.2d 134, 141 (Okla.1987).

As recited in the Board's nunc pro tunc order, its prior order of December 6, 1990, did not accurately reflect the decision actually rendered by the Board. Under such circumstances, absent a showing of intervening equities or prejudice to the parties, we think it is clear that the Board had the authority to correct a mistake in its decision and findings of fact and conclusions of law in order to accurately record and implement its actual ruling. No showing of prejudice or the existence of circumstances precluding the issuance of the nunc pro tunc order has been shown to exist here.

### Sufficiency of Evidence

■ Protestant's second point raised on appeal argues that the Board's January 9, 1991, order valuing the Inn was not supported by substantial evidence because the evidence indicated that the Assessor's income figures were incorrect, and because the Board improperly rejected competent evidence of comparable sales and the actual 1988 gross income figure for the Inn presented by Protestant. Protestant's argument as to this issue, however, is undermined by her failure to properly set forth in the summary of proceedings contained in her brief-in-chief the substance of all the evidence presented by the Assessor, or to specifically challenge each of the Board's findings of fact relating to the Assessor's testimony and evidence supporting his ad valorem tax valuation for the Inn.

The following findings of the Board were not directly challenged by Protestant:

> 5. The Assessor valued the underlying real property consisting of 7.47 acres at $292,854. The Assessor valued the improvements at $2,363,766. The Assessor's total value of the underlying real property and improvements at issue is $2,656,620. The parties stipulated that the value of personal property attributable to the [p]roperty is $539,253.
>
> . . . .
>
> 7. In support of the assessed valuation, the Assessor submitted a report (Assessor's Exhibit 14) containing three comparative values for the property arrived at by using a market approach, a cost approach, and an income approach. . . .
>
> . . . .
>
> 9. In support of the assessed value, the Assessor utilized the market value method as determined by sales of comparable property to value the underlying real property and improvements. The Assessor obtained hotel sales information (Assessor's Exhibit 4). The sales price of each hotel was divided by the gross income of each hotel in the year of sale to arrive at a gross income multiplier (GIM) for each hotel. The range of GIMs [sic] relied on by the Assessor was 2.73 to 2.48.

10. The Assessor also supported and substantiated the assessed value of the [p]roperty by introducing available market data....

11. In its analysis, the Assessor used the income figures for the subject property made available to it by the Protestant....

12. The Assessor used market data to ascertain if actual figures regarding the [p]roperty were in line with market figures. The Assessor utilized a Gross Income Multiplier (GIM) of 2.5 for its market approach valuation. Use of the GIM figure was supported by comparable sales data (Assessor's Exhibit 4).

Protestant failed to specifically refer to any of the above findings in her arguments challenging the sufficiency of the evidence. SCRA 1986, 12–213(A)(3) (Repl.1992). Instead, she argues that the Board erred in rejecting testimony presented by her concerning the accuracy of the Assessor's computation of value. Protestant's arguments concerning this issue focus principally on two contentions. First, she asserts that the Board erred in finding that the Assessor's income figures for the Inn were supported by the evidence, "although the evidence indicated that the Assessor's income figures were incorrect." Second, she argues that the Board erred in finding that Protestant failed to overcome the presumption of correctness, even though she "presented competent evidence of comparable sales and the actual 1988 gross income figure of $1,103,444 for the Property."

Protestant's challenge to the sufficiency of the evidence amounted to a generalized attack upon the Board's findings and fails to specifically refer to the Board's findings or the substance of the evidence contained in the record supporting the Assessor's ad valorem tax valuation of the Inn.

A contention that a judgment or finding of fact is not supported by substantial evidence is deemed to be "waived unless the summary of proceedings includes the substance of the evidence bearing upon the proposition, and the argument has identified with particularity the fact or facts which are not supported by substantial evi-

dence." Rule 12–213(A)(3); *see also In re Estate of McKim,* 111 N.M. 517, 521, 807 P.2d 215, 219 (1991); *Kincaid v. WEK Drilling Co.,* 109 N.M. 480, 482–83, 786 P.2d 1214, 1216–17 (Ct.App.1989). Protestant has failed to properly set out the substance of the testimony and evidence presented by the Assessor concerning his opinion of the market value of the Inn; instead, she urges this Court to find that other testimony cited by her more accurately fixed the value of the Inn.

The fact that the record contains conflicting evidence presented by Protestant's expert, and which, if accepted by the Board would have supported a different result, does not constitute grounds for reversal. The findings of fact adopted below, if supported by substantial evidence, are controlling on appeal. *See Montano v. Saavedra,* 70 N.M. 332, 373 P.2d 824 (1962); *Roybal v. Morris,* 100 N.M. 305, 669 P.2d 1100 (Ct.App.1983). The function of an appellate court is to review the evidence presented below, not to reweigh conflicting evidence. *See Sandoval v. Department of Employment Sec.,* 96 N.M. 717, 634 P.2d 1269 (1981); *Ideal Basic Indus., Inc. v. Evans,* 91 N.M. 460, 575 P.2d 1345 (1978).

Rule 12–213(A)(3) imposes a duty upon an appellant, who seeks to challenge findings adopted below, to marshal all of the evidence in support of the findings and then demonstrate that even if the evidence is viewed in a light most favorable to the decision reached below, together with all reasonable inferences attendant thereto, the evidence is insufficient to support the findings. *See Tyrpak v. Lee,* 108 N.M. 153, 768 P.2d 352 (1989). Protestant's brief-in-chief fails to properly set out the substance of the testimony and evidence presented by the Assessor which supports the findings entered by the Board.

Absent a proper attack upon the findings of fact adopted below or a failure to properly set forth the substance of all of the evidence bearing upon such findings, Protestant is bound by such findings. *Perez v. Gallegos,* 87 N.M. 161, 162, 530 P.2d 1155, 1156 (1974); *see also State ex rel. Thorn-*

*ton v. Hesselden Constr. Co.,* 80 N.M. 121, 452 P.2d 190 (1969). These omissions are fatal to Protestant's challenge to the sufficiency of the evidence.

### Method of Valuation

█ Protestant additionally argues that the Board's nunc pro tunc order adopted three findings of fact that were either contrary to law, arbitrary, capricious, or constituted an abuse of discretion. As we understand the brief-in-chief, Protestant contends that the Board, in applying the Gross Income Multiplier approach to determine the market value of the Inn, adopted a value that improperly included both personal property and business value. Protestant also contends that the valuation approved by the Board was not based on the 1988 market value as required by a regulation of the Property Tax Division, and that the Assessor's valuation for the Inn was not uniform. We find these arguments unpersuasive.

Findings of Fact Nos. 10 and 11, adopted by the Board, found that the Assessor obtained sales information of comparable hotel sales in determining its market valuation, utilized the Gross Income Multiplier (GIM) approach,[1] and "supported and substantiated the assessed value of the [p]roperty by introducing available market data." Finding of Fact No. 12, adopted by the Board, found that the Assessor "utilized a Gross Income Multiplier (GIM) of 2.5 for its market approach valuation," and that "[u]se of the GIM figure was supported by comparable sales data." These findings were not specifically identified or challenged by Protestant. As discussed above, in order to satisfy the provisions of Rule 12–213(A)(3), a party is required to specifically challenge findings of fact sought to be overturned on appeal.

█ In the absence of a specific challenge to the findings which support the Board's conclusions of law, the Board's determination that the method of valuation employed by the Assessor was supported by comparable sales data is controlling. *Id.* Similarly, Protestant's contention that the Board erred in accepting the Assessor's computation of income based on sources other than actual income figures provided by Protestant does not invalidate the Assessor's opinion as to the proper valuation. The Assessor testified that his requests to Protestant's employees for income figures for the time periods in question were rejected. Moreover, the Assessor did consider, in part, income data which was ultimately made available to him by Protestant's representatives. Under such circumstances, the Assessor could properly determine the value of the Inn using figures provided by Protestant and data from other sources, including market surveys for similar property.

Protestant also argues that the Assessor failed to base his valuation on the 1988 market value of the Inn, or to implement a program of updating property values, or to comply with a regulation of the Property Tax Division requiring utilization of current and correct values for the valuation of property. We think these contentions are refuted by the record. Protestant's brief-in-chief concedes that the Assessor's determination of value was based upon the sales comparison approach as required by statute (NMSA 1978, § 7–36–15 (Repl.Pamp.1990)), and that the Assessor testified that "sales data and income data indicated that there was no increase in value" of the property. Thus, Protestant has failed to point out how the Assessor's determination of value prejudiced her as to the 1990 ad valorem tax valuation.

Finally, Protestant contends that the Assessor's computations utilizing the Building

---

1. The Gross Income Multiplier (GIM) appraisal method is similar to the Gross Rent Multiplier (GRM) method of valuation. *See Barron's Real Estate Handbook,* 215 (2d ed. 1988). The GRM is based on the gross income derived from rents. *The McGraw–Hill Real Estate Handbook* 30–24 (Robert Irwin ed. in chief, 1984). The GIM is based on the gross income attributable to all sources, including, but not limited to, rent. *Id.* at 30–23. The GRM method and the direct sales comparison method are two generally accepted methods of valuation of improved properties in the comparative sales approach. *See* International Association of Assessing Officers, *Property Assessment Valuation* 114 (1977).

Residual Technique were erroneous and contrary to law. We need not address this contention since it is undisputed that the valuation, which is the subject of this appeal, was based upon the Assessor's opinion of ad valorem tax value computed under the comparable sales or market value approach, not the Building Residual Technique.

We find no error in the valuation adopted by the Board.

The Assessor's brief requests that we remand this case to the Board with a mandate to change the records to reflect an increase in the value of the Inn to $3,872,209, instead of $2,656,620. Because the Assessor did not cross-appeal, however, we cannot grant such relief.

### Conclusion

The order of the Board entered January 9, 1991, is affirmed.

IT IS SO ORDERED.

BIVINS and HARTZ, JJ., concur.