This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38439**

**RICKY D. CASE,**

      Worker-Appellee,

v.

**HANNA PLUMBING & HEATING COMPANY, INC. and MECHANICAL CONTRACTORS ASSOCIATION OF NEW MEXICO, INC. WORKERS' COMPENSATION GROUP FUND,**

      Employer/Insurer-Appellants.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Leonard J. Padilla, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellee

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Appellants

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** This is the second appeal in this workers' compensation case. In the first appeal, Hanna Plumbing and Heating Company, Inc. (Employer) challenged the Workers' Compensation Judge's (WCJ) compensation order, contending (1) "the WCJ's award of both permanent partial disability (PPD) benefits, under NMSA 1978, Section 52-1-42

(1990, amended 2015) and scheduled injury benefits under NMSA 1978, Section 52-1-43 (2003), improperly duplicated Worker's benefits"; and (2) "the WCJ erred in the start date for Worker's PPD benefits." *Case v. Hanna Plumbing & Heating Co.*, A-1-CA No. 34,934 memo op. ¶ 1 (N.M. Ct. App. July 18, 2017) (nonprecedential) (*Case I*). Ricky Case (Worker) cross-appealed, contending the WCJ erred in its "assessments of his (1) total impairment rating, (2) impairment at a less than additive value through the 'combined values' methodology, and (3) tort damages in assessing Employer's reimbursement rights." *Id.* We reversed and remanded on all issues with instructions to the WCJ to "assess his previous determinations and rulings based upon the analysis we set forth [in our memorandum opinion]." *Id.* ¶ 82.

**{2}** On remand, the WCJ entered a new compensation order, which the WCJ amended twice. The second amended compensation order (SACO or the order) is the subject of this opinion. In the SACO, the WCJ reassessed and expanded his prior findings as instructed by this Court. Still dissatisfied with the WCJ's order, Employer appeals.

**{3}** On appeal, Employer argues that (1) the WCJ did not comply with our prior mandate; (2) the WCJ's order combining Worker's scheduled injuries with nonscheduled injuries into one PPD calculation is contrary to law and improperly inflated Worker's PPD rating; (3) the WCJ erred in determining that Worker suffered permanent impairment to his low back and right and left hips; (4) the WCJ's finding that Worker suffered a 12 percent impairment to his low back is not supported by substantial evidence; and (5) the WCJ's reimbursement analysis/determination is erroneous and contrary to the instructions provided on remand. We agree with Employer that the portion of the WCJ's order combining Worker's scheduled injuries with non-scheduled injuries into one PPD calculation was contrary to law and improperly inflated Worker's PPD rating, and reverse and remand on this issue. Otherwise, we affirm.

## BACKGROUND

**{4}** The facts of this case were adequately set out in *Case I*; therefore, we will not restate them here. *See id.* ¶ 2.

## DISCUSSION

**{5}** "The Workers' Compensation Act [the Act]. . . is designed to compensate workers for injury arising out of and in the course of employment." *Flores v. McKay Oil Corp.*, 2008-NMCA-123, ¶ 9, 144 N.M. 782, 192 P.3d 777. Its objectives are to "assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the provisions of the [Act,]" NMSA 1978, § 52-5-1 (1990), and "to avoid uncertainty in litigation and to assure injured workers prompt payment of compensation." *Valdez v. Wal-Mart Stores, Inc.*, 1998-NMCA-030, ¶ 15, 124 N.M. 655, 954 P.2d 87 (alteration, internal quotation marks, and citation omitted). What's more, public policy demands that the Act "keep the injured

worker and his family at least minimally secure financially." *Aranda v. Miss. Chem. Corp.*, 1997-NMCA-097, ¶ 32, 93 N.M. 412, 600 P.2d 1202.

## I.      Our Prior Mandate

**{6}**      Employer first argues that the WCJ did not comply with this Court's directives set out in *Case I* and "instead issued a new and different decision that substantially change[d] his prior rulings in the same format this Court previously found did not allow for an effective review of the issues" by this Court. Worker counters that the WCJ complied with our prior decision and points to where the WCJ expanded his findings. We agree with Worker and explain.

**{7}**      In *Case I*, "[w]e reversed and remanded on all issues with instructions to the WCJ to assess his previous determinations and rulings based upon the analysis set forth in [our] opinion" and further directed the WCJ to "provide detailed, reasoned analyses, explanations, transparency, and authorities as to each disposition on each issue to be *contained either in amended or additional* findings of fact and conclusions of law or in a supportive and fully explanatory decision, or both, as best suits the WCJ." *Case I*, A-1-CA-34934, mem op. ¶ 82 (emphasis added). In directing the WCJ to reassess his prior determinations and rulings and provide either amended or additional findings of fact, the WCJ was authorized to re-examine his previous findings and conclusions following the analysis we outlined in *Case I. Id.* In complying with our directives, the WCJ reached different conclusions than in *Case I*, a result not prohibited by our opinion. Following our mandate, the WCJ issued an order detailing and developing several previous findings, as well as providing significantly more explanation for findings modified by the WCJ. The WCJ illustrated its calculation of benefits, costs, and reimbursements on an exhibit entitled "reimbursement worksheet." Therefore, to the extent the WCJ re-examined his previous findings, it did so following our mandate. We next address Employer's claims that the WCJ's calculation of PPD benefits was contrary to law.

## II.      The WCJ's Reimbursement Analysis

**{8}**      Employer argues that the WCJ failed to apply the required presumption in favor of Employer that all amounts received in a third-party tort claim settlement are due as reimbursement to Employer and, as a result, permitted double recovery by Worker of Workers' Compensation benefits and duplicative tort damages.[1] We do not agree.

**{9}**      On remand, the WCJ reassessed the valuation of Worker's claims and determined the damages suffered by Worker to be $4,059,160. The WCJ based this revised valuation on Worker's projected lost wages over his lifetime, projected medical expenses, loss of household services, pain and suffering, loss of consortium damages suffered by Worker's wife, and loss of enjoyment of life. The WCJ valued Worker's lost wages over his working life at $2,114,625; future medical expenses at $319,525, and

---

1Worker filed a third-party lawsuit and settled for $1,850,000.

pain, suffering, and his wife's loss of consortium damages at $1,625,000, for a total of $4,059,160. The tort settlement was $1,850,000.

**{10}** Employer does not dispute the evidence in the record, nor does he argue that the figures used by the WCJ were not supported by evidence establishing that it was more likely than not that Worker's tort damages compensated him and his Wife, by the amounts found, for injuries not compensated by Employer. Under our Rules of Evidence, Rule 11-301 NMRA, a presumption is effective only if the finder of fact is not persuaded by Worker that "the nonexistence of the presumed fact is more probable than its existence." *Trujillo v. Chavez*, 1979-NMCA-138, ¶ 15, 93 N.M. 626, 603 P.2d 736. The WCJ having found that Worker carried his burden of showing by a preponderance of the evidence that all but $28,527 of the damages received were for injuries not covered by the Workers' Compensation benefits paid by Employer. To successfully obtain reversal on appeal, Employer must challenge the sufficiency of the evidence in support of the WCJ's findings. Because Employer does not mount a challenge to the sufficiency of the evidence supporting the WCJ's findings that the damages suffered by Worker in every category were substantially more than the total paid by Employer in Workers' Compensation benefits, we apply our presumption of correctness. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that appellate courts presume the correctness of the district court's decision, and that the appellant has the burden of clearly demonstrating the decision was error).

### III.     Combining Scheduled and Unscheduled Injuries

**{11}** In this appeal, Employer argues that the WCJ should have awarded Worker separate scheduled injury benefits for each lower extremity injury and separate PPD benefits for Worker's non-scheduled injuries. Combining scheduled and non-scheduled injuries into one amount for PPD benefits, Employer argues, is contrary to our previous decision and the directives of *Gutierrez* and *Baca*. *See Gutierrez v. Intel Corp.*, 2009-NMCA-106, ¶ 17, 147 N.M. 267, 219 P.3d 524 ("[T]wo kinds of benefits, [determined separately] may be added together."); *Baca v. Complete Drywall Co.*, 2002-NMCA-002, ¶ 22, 131 N.M. 413, 38 P.3d 181 (holding that scheduled injuries are separate and distinct from non-scheduled injuries). We agree with Employer and explain.

**{12}** The statutory schemes for temporary total disability (TTD) and permanent partial disability (PPD) benefits are set out in NMSA 1978, Section 52-1-41 (2015) and Section 52-1-42, respectively. Section 52-1-42(B) (the PPD statute) states that "[i]f an injured worker receives [TTD] prior to an award of [PPD] benefits, the maximum period for [PPD] benefits shall be reduced by the number of weeks the worker actually receives [TTD] benefits." This Court has previously noted that "[i]n order to be entitled to partial disability benefits rather than scheduled injury benefits, [worker] must first show that the loss or loss of use of a specific body member has caused a separate and distinct disability or impairment to a part or parts of the body other than the specific member injured." *Gordon v. Dennisson Doors, Inc.*, 1992-NMCA-136, ¶ 3, 114 N.M. 767, 845 P.2d 861. A "worker who suffered an injury to a scheduled member [can] be considered

partially disabled under Section 52-1-42, if the injury to the scheduled member result[s] in a 'separate and distinct' injury to another part of the body." *Hise Constr. v. Candelaria*, 1982-NMSC-109, ¶ 10, 98 N.M. 759, 652 P.2d 1210.

**{13}** On remand, the WCJ revised his findings to only award Worker PPD benefits. Originally, the WCJ awarded Worker 500 weeks of PPD benefits and 180 weeks of TTD benefits. On remand, the WCJ found that Worker was entitled to 700 total weeks of PPD benefits under Section 52-1-42 based on factors, such as: going from a heavy physical capacity to a sedentary capacity, Worker's inability to perform his previous occupation as a pipefitter, and the percentage of impairment Worker suffered as demonstrated by expert testimony. The WCJ then calculated Worker's combined impairment percentage to be 42 percent. The WCJ also found that Worker was entitled to forty modifier points based on his age, education, occupation, training, and the fact that he went from a heavy physical capacity to a sedentary physical capacity.

**{14}** The WCJ did not, however, reduce the PPD benefits he awarded to Worker due to any TTD benefits Worker received, as mandated by Section 52-1-42(B) and contrary to our directive in *Case I* that the WCJ explain why Worker's PPD benefits were not reduced by TTD paid in *Case I. See* A-1-CA-34934, mem op. ¶ 31. Thus, the WCJ's finding that Worker is entitled to 700 weeks of PPD benefits based on an 82 percent impairment rating is contrary to law.

**{15}** PPD and TTD benefits are separate and distinct. They are set out in separate statutes, provide benefits for different lengths of time, and serve different purposes. *See* Section 52-1-41 and Section 52-1-42; *see also* NMSA 1978, § 52-1-25.1(A) (2017) (Definition of TTD) and NMSA 1978, § 52-1-26 (2017) (Definition and purpose of PPD). The WCJ must award benefits for TTD based on Section 52-1-43's schedules for each member. Worker's injuries to scheduled members cannot be considered as part of the percentage of partial disability assigned under Section 52-1-42. The WCJ must find that these injuries are "separate and distinct" and assign a separate and distinct PPD percentage based on these injuries. *Hise Constr.*, 1982-NMSC-109, ¶ 10. This, the WCJ did not do. Additionally, by only awarding Worker PPD benefits, rather than separate benefits for the time period and the percentage set by the schedule, and separate benefits for the different time period and percentage set by the law governing whole body impairments, as required by law, the WCJ inflated Worker's impairment rating. Workers with an impairment rating below 80 percent are limited to PPD benefits of 500 weeks. Section 52-1-42(A)(2). If the WCJ had assigned Worker his benefits for scheduled and non-scheduled benefits separately, as he was required to do, Worker would not be over 80 percent impaired as the "scheduled injury section does not take into consideration the occupation of the worker and how the loss of the specific member of the body may affect his or her ability to perform the duties of his or her job." *Hise Constr.*, 1982-NMSC-109, ¶ 9. "The schedule, for example, awards the same benefit to a piano player as to a night watchman for the loss of a finger, hand or arm." *Id.* Thus, we reverse the WCJ's finding that Worker is entitled to 700 weeks of PPD benefits and instruct the WCJ to award Worker benefits for scheduled and non-scheduled injuries separately in line with Section 52-1-41 and Section 52-1-42.

## IV.  Substantial Evidence

**{16}** The final issues raised and argued by Employer relate to the lack of substantial evidence supporting the findings of the WCJ. Employer argues: (1) the WCJ's determination that Worker suffered permanent impairments is not supported by substantial evidence because the testimony was speculative; and (2) the WCJ's finding that Worker suffered a 12 percent impairment to his low back is not supported by substantial evidence. We address each of Employer's contentions in turn.

**{17}** We review the whole record in workers' compensation cases to determine whether substantial evidence supports the WCJ's findings. *See Lewis v. Am. Gen. Media*, 2015-NMCA-090, ¶ 17, 355 P.3d 850. "The [WCJ's] findings will not be disturbed so long as they are supported by substantial evidence on the record as a whole." *Tallman v. ABF (Arkansas Best Freight)*, 1988-NMCA-091, ¶ 15, 108 N.M. 124, 767 P.2d 363. "Substantial evidence is credible evidence in light of the whole record that is sufficient for a reasonable mind to accept as adequate to support the conclusion." *Maez v. Riley Indus.*, 2015-NMCA-049, ¶ 9, 347 P.3d 732 (text only) (citation omitted). We review the evidence in the light most favorable to the decision, and we defer to the WCJ's resolution of conflicts in the evidence. *See Rodriguez v. McAnally Enters.*, 1994-NMCA-025, ¶ 11, 117 N.M. 250, 871 P.2d 14. In cases involving "uncertain, doubtful, or ambiguous findings," we are "bound to indulge every presumption to sustain the judgment." *Kincaid v. WEK Drilling Co.*, 1989-NMCA-111, ¶ 28, 109 N.M. 480, 786 P.2d 1214. "Whole record review is not an excuse for an appellate court to reweigh the evidence and replace the fact[-]finder's conclusions with its own." *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 10, 111 N.M. 550, 807 P.2d 734.

**{18}** We turn now to Employer's contentions. First, Employer argues that the WCJ's findings that Worker suffered permanent hip and back impairments were based on speculation and conjecture. Employer claims that, in his impairment report, Dr. Reeve did not diagnose Worker with bursitis yet testified to such in his deposition. Worker responds claiming that it is undisputed that he suffers pain in both of his hips because of the accident and that he was diagnosed with bursitis by Dr. Reeve and the IME physicians. Indeed, Dr. Reeve testified in his deposition that Worker had bursitis, which affected his hips. An independent medical examination (IME) was performed upon Worker by a panel of doctors including Christopher P. Patton, D.O., and Victoria Matt, M.D. In this IME, the panel concluded, within a reasonable degree of medical probability, that Worker had "trochanteric bursitis" in his left hip. Thus, viewing the above evidence in the light most favorable to the decision, the WCJ had sufficient evidence to support his findings. *See Rodriguez*, 1994-NMCA-025, ¶ 11. Even if we were to assume, arguendo, that Dr. Reeve's testimony was improperly speculative, as Employer argues, the independent medical exam concluded, based on their examination of Worker, and the diagnostic evidence, including an MRI: that Worker had bursitis in Worker's left hip, which was causally related to his workplace injury. Consequently, the WCJ's findings that Worker suffered permanent impairment to his hips and low back are supported by substantial evidence.

**{19}** Next, Employer contends that the WCJ's finding that Worker suffered a permanent impairment to his low back is not supported by substantial evidence. Dr. Reeve examined Worker and referred him for an MRI. The MRI revealed that Worker had a herniated disc in his spine. Based on this finding, Dr. Reeve assigned Worker a 7 percent impairment rating. Although the WCJ initially stated that Worker's impairment due to his low back injury was twelve percent, this appears to be a clerical error. Importantly, the WCJ corrected this error in his final impairment calculation, using the 7 percent figure assigned by Dr. Reeves. Our review of the calculations shows that this clerical error did not affect the final result. We, therefore, conclude that there is substantial evidence in the record to support the WCJ's findings of a 7 percent impairment rating. *Tallman*, 1988-NMCA-091, ¶ 15 (holding that we will not disturb the WCJ's findings on appeal if they are supported by substantial evidence).

**CONCLUSION**

**{20}** For the above-stated reasons, we agree with Employer that the WCJ's order combining Worker's scheduled injuries with non-scheduled injuries into one PPD calculation was contrary to law and improperly inflated Worker's PPD rating. Therefore, we reverse and remand on this issue. Otherwise, we affirm. To the extent our ruling on this issue requires recalculation of benefits consistent with this opinion, the WCJ is authorized to make those recalculations.

**{21}  IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**JANE B. YOHALEM, Judge**