2008-NMCA-026

177 P.3d 530

**Esther HALL, Worker–Appellee,**

v.

**CARLSBAD SUPERMARKET/IGA, and Food Industry Self Insurance Fund of New Mexico, Employer/Insurer–Appellants.**

No. 26,538.

Court of Appeals of New Mexico.

Dec. 6, 2007.

Jeff Diamond Law Firm, Jeffrey B. Diamond, Greta Fischer, Carlsbad, NM, for Appellee.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Max J. Madrid, Emil J. Kiehne, Albuquerque, NM, for Appellants.

## OPINION

VIGIL, Judge.

{1} This case presents an issue of first impression under the Workers' Compensation Act (the Act), NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through 2007): Does a doctor who performs an independent medical examination (IME) under Section 52–1–51, pursuant to the parties' agreement, exceed the scope of his authority when he diagnoses injuries not specifically identified in the agreement and concludes they were caused by the on-the-job accident? We hold

that the doctor did not exceed the scope of the IME and that the worker's compensation judge (WCJ) did not err by considering the information in awarding benefits. We also consider whether the parties' agreement precluded Worker from raising the newly diagnosed injuries in an amended workers' compensation claim, and hold that Worker was not precluded from seeking compensation for her newly diagnosed work injuries. We therefore affirm the WCJ's compensation order.

## I. BACKGROUND

{2} Worker is an elderly woman who worked at Carlsbad Supermarket (Employer) in the deli section of the store. She injured her knee and back when she fell while carrying supplies to the deli. Worker was diagnosed with a fracture to her patella and lower back lumbar strain, and Employer paid the costs of her medical care and provided disability benefits with respect to these injuries. Worker also complained of middle back thoracic back pain to Dr. Baca, her authorized healthcare provider. Dr. Baca diagnosed Worker's back pain as resulting from a compression fracture of Worker's T12 vertebra, and attributed the subtle wedging of Worker's T12 vertebra to Worker's on-the-job accident. Dr. Baca also determined that, as of February 4, 2004, Worker had reached maximum medical improvement.

{3} Employer denied Worker's request for benefits for the T12 compression fracture, disputing that the injury was causally related to the workplace accident. Worker filed a workers' compensation complaint and then a first amended complaint. After the first amended complaint was filed, the parties attended mediation and a recommended resolution was issued by the mediator and agreed to by the parties. In pertinent part the recommended resolution states, "[t]he primary issue in this case is whether Worker's T12 compression fracture is related to the on-the-job accidental injury[,]" and "as a compromise, interim resolution" provides (1) that the parties agreed that Worker had reached maximum medical improvement as of February 4, 2004, and (2) that Worker will receive an IME to be performed by Dr.

Nieves "to obtain an independent opinion of whether the T12 compression fracture is related to the on-the-job accidental injury." The recommended resolution also contains a provision providing that "[b]oth parties reserve and retain all rights and defenses regarding the claim for additional permanent partial disability benefits."

{4} On February 7, 2005, Dr. Nieves performed the IME of Worker and concluded that, while Worker had a T12 compression fracture, it was not causally related to her workplace accident because it predated the accident. However, in the course of his examination, Dr. Nieves identified injuries to Worker's sacrum, and diagnosed Worker with sacroiliac joint dysfunction and radiculitis as a result of her on-the-job injury. Dr. Nieves further concluded that Worker had not reached maximum medical improvement from her injuries.

{5} Worker then filed a second amended complaint based on the IME, seeking temporary total disability and permanent partial disability benefits, in addition to medical benefits and attorney fees. Another recommended resolution was proposed, which Worker rejected, and the case proceeded to a compensation hearing before the WCJ.

{6} At the compensation hearing, Employer objected to Dr. Nieves's opinions as exceeding the scope of the IME agreed to in the recommended resolution. Employer also contended that Worker was precluded from raising new injuries by the recommended resolution which, according to Employer, limited the issues in dispute to the causal relation of the T12 compression fracture to Worker's workplace accident. The WCJ determined that, based on the language contained in the recommended resolution, Worker was not limited to the issue of the T12 fracture. Accordingly, the WCJ considered Dr. Nieves's opinions about the newly diagnosed injuries in determining his compensation award to Worker. This appeal followed.

## II. DISCUSSION

{7} The issues Employer raises on appeal require us to interpret several provisions of the Act. In interpreting a statute, our review is de novo. *Smith v. Ariz. Pub.*

*Serv. Co.*, 2003–NMCA–097, ¶ 5, 134 N.M. 202, 75 P.3d 418. "Our main goal in statutory construction is to give effect to the intent of the legislature." *Archer v. Roadrunner Trucking, Inc.*, 1997–NMSC–003, ¶ 7, 122 N.M. 703, 930 P.2d 1155. "We look first to the plain meaning of the statute's words, and we construe the provisions of the Act together to produce a harmonious whole." *Smith*, 2003–NMCA–097, ¶ 5, 134 N.M. 202, 75 P.3d 418. After we determine the meaning of the statutes, "we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence." *Id.*

## A. Testimony of Independent Medical Examiner

█ {8} Employer argues on appeal that the WCJ erred by considering Dr. Nieves's testimony to the extent it went beyond the causal relationship between Worker's T12 compression fracture and the on-the-job accident. Employer also challenges the WCJ's determination, based on Dr. Nieves's testimony, that Worker was suffering from a sacral fracture, aggravation of bulging discs, and sacroiliac joint dysfunction, as a result of her on-the-job injury.

{9} To determine whether or not the WCJ erred by considering Dr. Nieves's testimony regarding injuries other than the T12 compression fracture, we must determine if Dr. Nieves was authorized to provide the testimony pursuant to the Act. We conclude that Dr. Nieves was authorized to provide the challenged testimony and therefore hold that the WCJ did not err by considering Dr. Nieves's opinions on issues other than Worker's T12 compression fracture.

█ {10} The Act limits the testimony that can be provided by medical experts at a workers' compensation hearing to testimony by "a treating physician or a health care provider who has provided an independent medical examination pursuant to the Act."

*Banks v. IMC Kalium Carlsbad Potash Co.*, 2003–NMSC–026, ¶ 28, 134 N.M. 421, 77 P.3d 1014; see also § 52–1–51(C). The provision of the Act dealing with IMEs provides that, "[i]n the event of a dispute between the parties concerning any medical issue, if the parties cannot agree upon the use of a specific independent medical examiner, either party may petition a workers' compensation judge for permission to have the worker undergo an independent medical examination." § 52–1–51(A).[1] This provision provides two means by which an IME may be obtained: (1) by the agreement of the parties or (2) by order of the WCJ. *Id.*

{11} In this case, the parties agreed as part of the recommended resolution for an IME to be performed by Dr. Nieves in order to "obtain an independent opinion of whether the T12 compression fracture [was] related to the on-the-job accidental injury." Employer argues that, although the parties agreed that Dr. Nieves would conduct an IME of Worker, Dr. Nieves exceeded the scope of the authority conveyed to him by not limiting his examination or opinions to the T12 compression fracture. According to Employer, the above-quoted language of the recommended resolution operated to limit the scope of the IME solely to the causal relationship between the T12 compression fracture and Worker's accidental on-the-job injury, and Dr. Nieves's opinions regarding other back-related injuries caused by Worker's accident were outside the scope of the parties' agreement.

{12} Neither this Court nor our Supreme Court have had the occasion to consider whether and how the parties may limit the authority of an independent medical examiner when an IME is conducted pursuant to the agreement of the parties. Although Section 52–1–51 appears to contemplate circumstances in which parties may enter into agreements to have an IME conducted, the Act provides no provisions specifically addressing what must be contained in the

---

1. The Act, including Section 52–1–51, was revised by amendment effective July 1, 2005. This Court only applies revised provisions of the Act prospectively, including procedural provisions, absent an express mandate by the legislature to apply the provision retroactively or a compelling reason for doing so. *See Jojola v. Aetna Life & Cas.*, 109 N.M. 142, 143, 782 P.2d 395, 396 (Ct.App.1989). Since Worker's claim accrued prior to the effective date of the 2005 amendment, we apply the pre-amendment version of the Act to the issues before us.

agreement. Nor does Rule 1–035 NMRA, governing IMEs in civil proceedings before the district courts, provide us with guidance for resolving the matter before us, as Rule 1–035 only applies in circumstances where a court has ordered an IME be conducted. See *State ex rel. Miller v. Tackett*, 68 N.M. 318, 321, 361 P.2d 724, 726 (1961).

{13} Employer argues that we should rely on principles of contractual interpretation to determine the extent of the authority the parties bestowed on Dr. Nieves through the agreed upon recommended resolution. Worker disagrees, arguing that a recommended resolution is not a contract but an informal order that becomes binding if not contested, and thus principles of contractual interpretation are inapplicable. We previously held in *Norman v. Lockheed Engineering & Science Co.*, 112 N.M. 618, 620–21, 817 P.2d 1260, 1262–63 (Ct.App.1991), that a conclusively binding recommended resolution was tantamount to a compensation order. We also recently stated in *Benavidez v. Benavidez*, 2006–NMCA–138, ¶ 8, 140 N.M. 637, 145 P.3d 117 (quoting *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971)), that "[t]he 'same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments.'" In construing a court order or judgment, "[t]he plain meaning of the language used is the primary indicator of intent." *Benavidez*, 2006–NMCA–138, ¶ 8, 140 N.M. 637, 145 P.3d 117.

{14} We see nothing ambiguous about the language used in the resolution. The resolution states that the "primary issue" is whether the T12 compression fracture is related to the on-the-job accident. The word "primary" indicates that there are other issues as well. The resolution then makes a recommendation for an "interim resolution" of the case. "Interim" means "between more" according to Webster's New Collegiate Dictionary (1977), thus indicating that more proceedings are anticipated to occur in the case. The resolution also expressly states that "[b]oth parties reserve and retain all rights and defenses."

{15} Reading the resolution as a whole, it constitutes a recommendation that Worker should obtain an IME from Dr. Nieves in order to attempt to resolve the parties' differences regarding the T12 issue, with the expectation that there will be further proceedings after the IME to establish a final resolution. The parties accepted this recommendation. No one—neither the parties nor the mediator—had any way of knowing that Dr. Nieves might discover additional work-related injuries during his examination. But the resolution did not say anything about Worker giving up her right to pursue additional injuries that might come to light. There is nothing in the Employer's brief or references to the record to convince us that the language contained in the recommended resolution reflects an intent or agreement by both parties to limit the IME to the solitary issue of whether Worker's T12 compression fracture was causally related to her workplace accident. Consequently, the parties' agreement did not prohibit Dr. Nieves from performing a differential diagnosis to determine the cause of Worker's back pain.

{16} Pursuant to Section 52–1–51, the testimony of the physician conducting an IME may be provided at a compensation hearing. § 52–1–51(C). Because we hold that Dr. Nieves possessed the authority to conduct an IME and to provide testimony regarding information other than the causal relationship between Worker's on-the-job injury and the T12 compression fracture, we hold that the WCJ did not err in considering Dr. Nieves's testimony regarding Worker's other injuries. We further hold that there was sufficient evidence for the WCJ to determine that Worker suffered from a sacral fracture, aggravation of bulging discs, and sacroiliac joint dysfunction as a result of her workplace accident. See *Garcia v. Homestake Mining Co.*, 113 N.M. 508, 510, 828 P.2d 420, 422 (Ct.App.1992) (" 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Register v. Roberson Constr. Co.*, 106 N.M. 243, 245–46, 741 P.2d 1364, 1366–67 (1987))).

{17} Employer argues that the WCJ's decision, if not reversed, will result in the decreased "effectiveness of both IMEs and recommended resolutions as tools in helping to

resolve disputes under the Act." Employer contends that the use of recommended resolutions and IMEs in the workers' compensation context are designed to further the goals of the Act by assuring the speedy provision of benefits and resolution of controversies, and that allowing health care providers "a roving commission to opine on all issues in a case, or to inject new issues into a case," will eliminate IMEs as a tool to assist the parties in narrowing the question to be determined. Because we hold that the language contained in the recommended resolution was not sufficiently explicit to limit the physician's authority to conduct the IME, and that Employer did not demonstrate an agreement by the parties to limit the physician's authority, we do not reach the larger issue of whether or not parties involved in a workers' compensation dispute may, by agreement, limit the scope of an IME to a specific issue. Accordingly, we do not discuss the policy considerations raised by Employer or determine whether and to what extent parties may limit the scope of an IME.

## B. New Issues Raised by Worker's Second Amended Complaint

■ {18} Employer also challenges the WCJ's determination that Worker was not restricted from raising the new injuries in the second amended complaint or from requesting temporary total disability benefits in light of Dr. Nieves's opinion that Worker had not reached maximum medical improvement. Employer argues that the parties stipulated that Worker had reached maximum medical improvement as of February 4, 2004, and that the WCJ had no authority to modify the recommended resolution since Worker did not seek to have the recommended resolution set aside within the applicable time limit.

{19} The recommended resolution in this case was not a final resolution of all of the issues in dispute, but was merely an interim resolution. The interim resolution reserved "all rights and defenses" of both parties "regarding the claim for additional permanent partial disability benefits"; deferred the claim for additional permanent partial disability benefits; and left medical benefits

open. The parties did not enter into a formal settlement agreement and no releases were signed. Cf. *Fasso v. Sierra Healthcare Ctr.*, 119 N.M. 132, 134, 888 P.2d 1014, 1016 (Ct.App.1994) (holding that a worker should be permitted to set aside a recommended resolution on the grounds of "change in condition" where there was no approved settlement agreement or releases executed). Thus, the recommended resolution did not resolve Worker's claim or lead the parties to believe that the litigation had ended, and contrary to Employer's suggestion, NMSA 1978, Section 52-5-5(C) (1993) (providing that if a party fails to make a timely objection to a recommended resolution of the case, the party is conclusively bound by the recommended resolution), and NMSA 1978, Section 52-5-9 (1989) (providing that upon application, a WCJ may modify a previous compensation order on specified grounds) do not apply in this case.

{20} We must also bear in mind that the Act is the exclusive remedy for workers seeking compensation for on-the-job injuries. § 52-1-6(E); *Peterson v. Wells Fargo Armored Servs. Corp.*, 2000-NMCA-043, ¶ 10, 129 N.M. 158, 3 P.3d 135. The Act was intended to provide "quick and efficient delivery of indemnity and medical benefits to injured and disabled workers" in return for workers' renunciation of their common law rights. See *Breen v. Carlsbad Mun. Schs.*, 2003-NMCA-058, ¶ 18, 133 N.M. 618, 67 P.3d 908 (internal quotation marks and citation omitted), rev'd on other grounds by 2005-NMSC-028, ¶ 2, 138 N.M. 331, 120 P.3d 413. This purpose is not fulfilled by permitting employers to rely on technical, circuitous routes to avoid their responsibilities. See *Perea v. Gorby*, 94 N.M. 325, 329, 610 P.2d 212, 216 (Ct.App.1980) (stating that "the spirit of [the Act] flows in the direction of workman and toward his protection. The compensation carrier should not seek technical, circuitous routes to avoid its responsibilities"). To give binding and conclusive effect to the recommended resolution would prohibit Worker's recovery of temporary total disability benefits or permanent partial disability benefits resulting from her back injury, and would not further the purposes of the Act to "maximiz[e] the limited recovery avail-

able to injured workers," *Wagner v. AGW Consultants,* 2005–NMSC–016, ¶ 25, 137 N.M. 734, 114 P.3d 1050, or " 'to make industry bear the burden of workers' injuries.' " *Archer v. Roadrunner Trucking, Inc.,* 1997–NMSC–003, ¶ 7, 122 N.M. 703, 930 P.2d 1155 (quoting *Corn v. N.M. Educators Fed. Credit Union,* 119 N.M. 199, 203, 889 P.2d 234, 238 (Ct.App.1994)).

{21} The WCJ therefore was not bound to the parties' stipulation concerning the date of maximum medical improvement and it was permissible for him to consider Dr. Nieves's opinion that Worker had not yet reached maximum medical improvement.

## III. CONCLUSION

{22} We hold that Dr. Nieves was authorized to provide testimony regarding Worker's other back injuries arising from Worker's workplace accident and that the WCJ did not err in considering all of Dr. Nieves' testimony and opinions. We further hold that the WCJ did not err by allowing Worker to seek compensation for the additional injuries identified by Dr. Nieves in the IME. The WCJ's compensation order is affirmed.

{23} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and IRA ROBINSON, Judges.