Certiorari Denied, August 26, 2013, No. 34,262

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMCA-099

Filing Date: July 16, 2013

Docket No. 32,622

WILBERT LIVINGSTON,

       Worker-Appellant,

v.

ENVIRONMENTAL EARTHSCAPES,
d/b/a GROUNDS KEEPER and
CAMBRIDGE,

       Employer/Insurer-Appellees.

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Terry S. Kramer, Workers' Compensation Judge

Victor A. Titus
Farmington, New Mexico

for Appellant

Butt, Thornton & Baehr PC
David N. Whitham
Emily A. Franke
Albuquerque, NM

for Appellees

## OPINION

**WECHSLER, Judge.**

**{1}** Worker, Wilbert Livingston, appeals from a compensation order entered pursuant to the Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2007). Worker contends the Workers' Compensation Judge (WCJ) erred in

concluding that Section 52-1-47.1 prevents him from receiving permanent partial disability (PPD) and loss of use (LOU) benefits that exceed his average weekly wage. We issued a notice proposing to summarily affirm. Worker filed a memorandum in opposition and Employer, Environmental Earthscapes/Grounds Keeper, and Insurer, Cambridge, (collectively, Employer) filed a memorandum in support. We remain unpersuaded by Worker's arguments and affirm. We hold that, based on Section 52-1-47.1, Worker may not receive PPD and LOU benefits that exceed his average weekly wage.

## BACKGROUND

**{2}** On October 13, 2010, Worker filed a complaint for occupational injury, seeking to recover benefits for injuries he sustained in a workplace accident on November 12, 2008. At the time of the accident, Worker was earning an average weekly wage of $377.92. He had been working as a landscaper/groundskeeper for Employer for approximately six weeks. Worker did not return to work after the accident.

**{3}** Following a trial, the WCJ issued a compensation order finding that the accident was compensable. The WCJ found that Worker's right wrist crush injury and carpal tunnel syndrome were causally related to the accident, along with Worker's psychological disorders, including depression, pain disorder, and adjustment disorder. As relevant to this appeal, the WCJ concluded: (1) Worker is entitled to PPD benefits at eighty-seven percent of his compensation rate commencing on March 19, 2012, the date of maximum medical improvement (MMI), and continuing through the remainder of the 700-week benefit entitlement period; and (2) Worker is entitled to 140 weeks of scheduled injury or LOU benefits for the right wrist injury at eighty percent of his compensation rate commencing on March 19, 2012. The WCJ concluded that Worker's PPD and LOU benefits should run concurrently and limited the total amount of these benefits to Worker's average weekly wage of $377.92 pursuant to Section 52-1-47.1.

## APPLICATION OF SECTION 52-1-47.1

**{4}** Worker contends that the WCJ erred as a matter of law in limiting his benefits to his average weekly wage pursuant to Section 52-1-47.1. He contends that for the 140 weeks he is entitled to receive PPD and LOU benefits, he should receive $582.00 per week, which represents the combined total of his LOU and PPD benefits, instead of $377.92 per week. We note that Worker does not challenge the WCJ's conclusion that the PPD and LOU benefits should be paid concurrently rather than consecutively.

**{5}** We review workers' compensation cases under a "whole record standard of review." *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926. When we are called upon to review a WCJ's interpretation of statutory requirements, our review is de novo. *See DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 14, 146 N.M. 453, 212 P.3d 341.

**{6}** Section 52-1-47.1(A) of the Act states:

> Unless otherwise contracted for by the worker and employer, *workers' compensation benefits shall be limited so that no worker receives more in total payments, including wages and benefits from his employer, by not working than by continuing to work.* Compensation benefits under the . . . Act shall accordingly be reduced, if necessary, to account for any wages and employer-financed disability benefits a worker receives after the time of injury. . . . This section does not apply to social security payments, employee-financed disability benefits, benefits or payments a worker received from a prior employer, payments for medical or related expenses or general retirement payments, except it does apply to disability retirement benefits.

(Emphasis added.) Worker contends that we should interpret the emphasized language in relation to a worker's lifetime earnings, not in relation to a worker's weekly earnings. Worker states that, but for the accident, he would have worked for twenty additional years, until he was seventy years old. He states that he would have earned $680,000 in wages and benefits over this twenty-year period and thus argues that the WCJ should only have limited his worker's compensation benefits to $680,000. We disagree.

**{7}** It is well settled that "[t]he purpose of the . . . Act is to compensate an injured employee for the reduction of his earning capacity." *Vinyard v. Palo Alto, Inc.*, 2013-NMCA-001, ¶ 10, 293 P.3d 191. For purposes of the Act, earning capacity is calculated in relation to a worker's average weekly wage. *See, e.g.*, Section 52-1-20 (defining "average weekly wage" and explaining how "average weekly wage" is to be determined). As we explained in *Vinyard*, Section 52-1-20 "was enacted to promote fair calculation of average wages for injured workers, as well as to provide a measure of fairness to employers by trying to eliminate influences that might inflate or deflate the wage from a fair average." *Vinyard*, 2013-NMCA-001, ¶ 10.

**{8}** Even when an injured worker is paid on a non-weekly basis, it is the average weekly wage that controls the determination of benefits. *See, e.g.*, *Duran v. Albuquerque Pub. Sch.*, 105 N.M. 297, 299-300, 731 P.2d 1341, 1343-44 (Ct. App. 1986) (calculating average weekly wage to determine benefits when worker was paid monthly); *cf. Eberline Instrument Corp. v. Felix*, 103 N.M. 422, 424, 708 P.2d 334, 336 (1985) (holding that benefits should be calculated based on the average weekly wage being earned by the employee at the time of the accident rather than on the average weekly wage the employee had been earning at some time prior to the accident).

**{9}** Section 52-1-47.1(A) of the Act states that "workers' compensation benefits shall be limited so that no worker receives more in total payments . . . by not working than by continuing to work." Consistent with the Act as a whole, we conclude that this statute

3

requires consideration of the amount of benefits a worker can receive on a weekly basis, not over the course of a lifetime. When we are called upon to interpret a statute that is part of a larger act, "we examine the act in its entirety, construing each section in connection with every other section." *Baca v. Complete Drywall Co.*, 2002-NMCA-002, ¶ 13, 131 N.M. 413, 38 P.3d 181 (alteration, internal quotation marks, and citation omitted). We see no evidence that the Legislature intended benefits to be considered on a lifetime basis for purposes of Section 52-1-47.1, but on a weekly basis for all other purposes.

**{10}** Worker relies on *Baca* and *Gutierrez v. Intel Corp.*, 2009-NMCA-106, 147 N.M. 267, 219 P.3d 524, but neither supports his position. In *Baca*, we explained that "disabilities caused by scheduled injuries and disabilities caused by injuries to non-scheduled members are separate and distinct concepts." 2002-NMCA-002, ¶ 21. In *Gutierrez*, we recognized "*Baca*'s core principle [was] that [these] two kinds of benefits may be added together." *Gutierrez*, 2009-NMCA-106, ¶ 17. The issue in this case is not whether Worker's PPD and LOU benefits are separate and distinct; rather, the issue is whether Worker can recover more in benefits on a weekly basis than he was earning prior to the accident. For the reasons discussed above, we conclude that the WCJ correctly interpreted Section 52-1-47.1 to limit Worker's benefits to his average weekly wage.

**CONCLUSION**

**{11}** We affirm the compensation order entered by the WCJ.

**{12}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Livingston v. Envtl. Earthscapes*, No. 32,622**

**APPEAL AND ERROR**
Remand
Standard of Review

**STATUTES**
Interpretation

**WORKERS' COMPENSATION**
Disability, Partial
Rate of Compensation