The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: April 1, 2024

**NO. S-1-SC-39225**

**AZTEC MUNICIPAL SCHOOLS**
**and CCMSI,**

Employer/Insurer-Appellees-Petitioners,

v.

**ANA LILIA CARDENAS,**

Worker-Appellant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Reginald Woodard, Workers' Compensation Administration Judge**

Allen, Shepherd & Lewis, P.A.
Joshua A. Collins
Katrina Bagley Brown
Albuquerque, NM

for Petitioners

Titus & Murphy Law Firm
Victor A. Titus
Farmington, NM

for Respondent

University of New Mexico School of Law
Michael B. Browde

David J. Stout

Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

**OPINION**

**ZAMORA, Justice.**

{1}    We are called upon to review the constitutionality of provisions in the Workers' Compensation Act (the Act) which treat workers with mental impairments differently than workers with physical impairments. We address whether the compensation limit imposed by the Act on the duration of disability benefits for a secondary mental impairment violates the equal protection clause of the New Mexico Constitution. *See* N.M. Const. art. II, § 18 ("No person shall be . . . denied equal protection of the laws."). We hold that it does, and while we affirm the Court of Appeals, we also clarify that our analysis of the relevant provisions of the Workers' Compensation Act does not include the use of a term coined by the Court of Appeals, which incorrectly refers to subsequent physical impairments as "secondary physical impairments."

**I.    BACKGROUND**

{2}    The facts are undisputed. Ana Lilia Cardenas (Worker) injured her knee in the course of her employment as a special education teacher. As a result, she has a physical impairment to her knee and a secondary mental impairment, both caused by her knee injury.

{3} The Workers' Compensation Judge awarded Worker permanent partial disability (PPD) benefits for her knee injury (a scheduled injury) for a duration of 150 weeks. *See* NMSA 1978, § 52-1-43(A)(30) (2003) (limiting the compensation benefits a worker may receive for a knee injury to 150 weeks). The Act limits the maximum period of PPD benefits for a secondary mental impairment to "the maximum period allowable for the disability produced by the physical impairment." NMSA 1978, § 52-1-42(A)(4) (2015). Since the initial physical impairment was to the knee, the Workers' Compensation Judge limited Worker's recovery for her secondary mental impairment to the maximum benefit duration allowed for the knee, which is 150 weeks. *See* § 52-1-43(A)(30).

{4} Worker appealed, arguing that limiting the duration of allowable benefits for secondary mental impairments to the maximum allowable duration of benefits for the original physical impairment violates the equal protection clause of the New Mexico Constitution. *Cardenas v. Aztec Mun. Schs. & CCMSI*, 2022-NMCA-038, ¶ 1, 516 P.3d 169 As she did in the administrative hearing, Worker asserts that equal protection is violated because subsequent physical impairments, unlike secondary mental impairments, are assessed as separate and distinct injuries. Further, the duration of allowable benefits for subsequent physical impairments is not determined by the maximum duration of benefits for the original physical

impairment as it is for secondary mental impairments. The Court of Appeals agreed and held that NMSA 1978, Section 52-1-41(C) (2015) (addressing compensation benefits for permanent total disability) and Section 52-1-42(A)(4) (addressing compensation benefits for permanent partial disability) violate the equal protection clause of the New Mexico Constitution because the duration of compensation for workers who have secondary mental impairments is determined differently than it is for workers with subsequent physical impairments. *Cardenas*, 2022-NMCA-038, ¶¶ 1, 2.

{5}    We granted certiorari to determine whether Section 52-1-41(C) and Section 52-1-42(A)(4) of the Workers' Compensation Act violate the equal protection clause of the New Mexico Constitution. In support of its certiorari petition, Aztec Municipal Schools and its insurer CCMSI (collectively Employer) also argue that the Court of Appeals incorrectly invented a new category of impairment not contained in the Act, that of "secondary physical impairment,"[1]

---

[1]Employer also asserts that there is a conflict in the Court of Appeals between *Gold v. Armand Hammer United World Coll.*, A-1-CA-36052, mem. op. (N.M. Ct. App. Sept. 18, 2018) (non-precedential), and its opinion in this case. We need not address this assertion because unpublished Court of Appeals opinions have no precedential value. *See* Rule 12-405(A) NMRA; *Gormley v. Coca-Cola Enters.*, 2004-NMCA-021, ¶ 10, 135 N.M. 128, 85 P.3d 252 (noting that "an unpublished opinion of this Court is of no precedential value").

3

## II. STANDARD OF REVIEW

{6}    We review both a workers' compensation judge's application of the law to the facts and the constitutionality of legislation de novo. *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 14, 146 N.M. 453, 212 P.3d 341; *Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 10, 378 P.3d 13. We presume that legislation is constitutional and do not "question the wisdom, policy, or justness of [statutes] enacted by our Legislature." *Rodriguez*, 2016-NMSC-029, ¶ 10 (internal quotation marks and citation omitted). However, when parties allege that a statute enacted by the Legislature unconstitutionally discriminates against them, we must decide the merits of the allegations. *Id.* ¶ 2. Were we to do otherwise, we would be "shrinking from [our] responsibilities as an independent branch of government" to safeguard constitutional rights. *Id.*

## III. SUBSEQUENT PHYSICAL IMPAIRMENTS ARE COMPENSABLE REGARDLESS OF THE TERM USED BY THE COURT OF APPEALS

{7}    Before beginning our equal protection analysis, we note that the Court of Appeals coined the term "secondary physical impairment" to describe a subsequent physical impairment caused by a compensable work-related injury. *Cardenas*, 2022-NMCA-038, ¶ 1; *see also Baca v. Complete Drywall Co.*, 2002-NMCA-002, ¶¶ 16, 26, 131 N.M. 413, 38 P.3d 181. The Court of Appeals did this to analyze whether the Act unconstitutionally discriminates against a class of similarly situated

4

individuals. Although the Court of Appeals acknowledges at the outset that the Act does not use that terminology, *Cardenas*, 2022-NMCA-038, ¶ 1 n.2, its use of this non-statutory term distracts from the requisite constitutional analysis.

{8}     Employer seizes on the term "secondary physical impairment" and argues that the Court of Appeals created a new category of impairment that contradicts the language of the Act and justifies reversal because the Act nowhere references "secondary physical impairments." We disagree. The Act provides compensation for subsequent physical impairments that are caused by compensable work-related injuries. *Baca*, 2002-NMCA-002, ¶¶ 24, 26, and Employer "has never argued for *Baca* and all other subsequent physical injury cases to be overturned or reversed." Thus, the term coined by the Court of Appeals is far from a fatal flaw in its constitutional analysis. Still, Employer not unreasonably questions the use of the term "secondary physical impairment" and asks us to clarify that the Act does not reference or define the term "secondary physical impairment" and that the term has no precedential value. We agree that the term coined by the Court of Appeals is inaccurate, and as such, it should be avoided in analyzing Worker's equal protection claim, or in any future analysis of the Worker's Compensation Act. We turn now to our constitutional analysis.

## IV. EQUAL PROTECTION ANALYSIS

{9} The equal protection clause of the New Mexico Constitution provides that no person shall be denied equal protection of the laws. N.M. Const. art. II, § 18. This constitutional provision mandates that similarly situated individuals be treated alike, absent a sufficient reason to justify disparate treatment. *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 21, 137 N.M. 734, 114 P.3d 1050. The equal protection clause prohibits the government from "creating statutory classifications that are unreasonable, unrelated to a legitimate statutory purpose, or are not based on real differences." *Breen v. Carlsbad Mun. Schs.*, 2005-NMSC-028, ¶ 7, 138 N.M. 331, 120 P.3d 413 (internal quotation marks and citation omitted).[2]

{10} There are three steps to our equal protection analysis. *Rodriguez*, 2016-NMSC-029, ¶ 9. We first identify whether the legislation in question creates a class of similarly situated individuals who are treated differently. *Id.* If so, we "determine the [appropriate] level of scrutiny that applies to the challenged legislation." *Id.*

---

[2]In *Breen*, we held that a statutory provision which capped workers' compensation "for persons with primary mental impairments at 100 weeks, while allowing substantially more compensation for persons with physical impairments" was unconstitutional. 2005-NMSC-028, ¶¶ 7, 50. Though *Breen* addressed a different issue than that presented in this appeal, its general discussion of mental impairments in the context of the Workers' Compensation Act and its determination of the standard of review for persons with mental impairments provide the appropriate framework for our constitutional analysis.

6

(internal quotation marks and citation omitted). We conclude our analysis by "applying the appropriate level of scrutiny to determine whether the legislative classification is constitutional." *Id.* (internal quotation marks and citation omitted).

**A.    Workers with Secondary Mental Impairments Are Similarly Situated to Workers with Subsequent Physical Impairments and Are Treated Dissimilarly**

{11}    The threshold question in our equal protection analysis is "whether the legislation creates a class of similarly situated individuals who are treated dissimilarly." *Breen*, 2005-NMSC-028, ¶ 10. There is no dispute that Worker is permanently partially disabled and is entitled to benefits for both her initial physical knee injury and her secondary mental impairment. Worker contends she is similarly situated to other workers who have a subsequent physical impairment resulting from the original work-related injury but is treated dissimilarly. She bases her claim on provisions of the Act that establish a different method for determining the duration of benefits for secondary mental impairments than that used to determine the duration of benefits for subsequent physical impairments.

{12}    The Act defines *impairment* in general terms as "an anatomical or functional abnormality existing after the date of maximum medical improvement." NMSA 1978, § 52-1-24(A) (1990). This definition does not distinguish between physical and mental impairments, though mental impairments are further defined. A *primary*

7

*mental impairment* is "a mental illness arising from an accidental injury . . . in the course of employment . . . involv[ing] no physical injury and consist[ing] of a psychologically traumatic event that is generally outside of a worker's usual experience." Section 52-1-24(B). A *secondary mental impairment* is "a mental illness resulting from a physical impairment caused by an accidental injury arising out of and in the course of the employment." Section 52-1-24(C). A physical impairment has only a single definition regardless of whether it is the original work-related injury or a subsequent physical injury. But it has long been recognized that a subsequent physical impairment caused by the initial work-related injury is compensable under the Act as a separate injury. *See Baca*, 2002-NMCA-002, ¶¶ 15, 26-27. It follows that workers with secondary mental impairments are similarly situated to workers with subsequent physical impairments because they have both suffered separate compensable injuries caused by initial work-related injuries and the effect of the injury is the same in that it impairs workers' capacities to perform work and prevents them from earning a wage because of an on-the-job accident. *Breen*, 2005-NMSC-028, ¶ 48. For these reasons, we conclude that workers with secondary mental impairments are similarly situated to workers with subsequent physical impairments under the Act.

8

{13}    We turn now to whether these similarly situated workers are disparately treated in how they are compensated for their work-related injuries. PPD benefits are determined by calculating the worker's degree of impairment. NMSA 1978, § 52-1-26 (2017). Both Section 52-1-41(C) (compensation when a worker is totally disabled) and Section 52-1-42(A)(4) (compensation when a worker is partially disabled) limit the duration of benefits for a disability resulting from secondary mental impairment to the maximum period allowable "for the disability produced by the physical impairment." By contrast, the duration of total or partial disability benefits for subsequent physical impairments is not tethered to the duration of benefits allowable for the original physical injury. *See* § 52-1-42(A)(1) and (2). For permanent total disability resulting from a subsequent physical impairment, the Act allows workers to receive benefits for the remainder of their lives. Section 52-1-41(B). For permanent partial disability resulting from a physical impairment, the benefits duration "shall depend upon the extent and nature of the partial disability . . . ." Section 52-1-42(A).

{14}    To understand the effect of tethering the benefits duration for secondary mental impairments to the initial physical injury, we review the benefits duration for physical injuries. For injuries to certain body parts, commonly referred to as scheduled injuries, the Act establishes a schedule for the maximum number of weeks

9

a worker can receive benefits for an accidental injury. Depending on the body part, the number of weeks a worker can receive benefits for a scheduled injury ranges from 7 to 200 weeks. Section 52-1-43(A). Not all physical injuries are on this schedule. Other physical injuries, like those to the hip, to the shoulder, or to the back, are not covered by this statutory schedule.[3] Nor are mental injuries. We refer to these as non-scheduled injuries.

{15} The benefits duration for non-scheduled injuries is significantly greater than for scheduled injuries. *See* § 52-1-42(A)(1) (capping benefits for permanent partial physical disability for non-scheduled physical injuries at 500 or 700 weeks depending on percentage of disability). By contrast, even though mental impairments are also non-scheduled injuries, the duration of compensation benefits for secondary mental impairments is tethered to the benefit period for the original physical injury. Thus, for compensation purposes, the Act treats a subsequent physical impairment, whether scheduled or non-scheduled, as a distinct and separate injury from the original physical injury arising out of and in the course of

---

[3]*See Nelson v. Nelson Chem. Corp.*, 1987-NMCA-024, ¶ 9, 105 N.M. 493, 734 P.2d 273 (describing an injury to the hip as a non-scheduled injury); *Carter v. Mountain Bell*, 1986-NMCA-103, ¶¶ 33-34, 105 N.M. 17, 727 P.2d 956 (describing an injury to the shoulder as a non-scheduled injury).

10

employment.[4] But it does not treat a secondary mental impairment as a separate and distinct injury from the original physical injury for compensation purposes; instead, it tethers the benefits duration to the initial physical injury. If the initial workplace injury was a scheduled injury, a worker who then suffers a secondary mental impairment, which is a non-scheduled injury, will only receive benefits for the duration allowed for a scheduled injury. The only way a worker with a secondary mental impairment can receive benefits for the duration of that non-scheduled injury is if the initial physical injury was also non-scheduled. But the worker whose subsequent impairment is physical is not subject to such an arbitrary fate.[5] That

---

[4]*Cf. Gutierrez v. Intel Corp.*, 2009-NMCA-106, ¶ 14, 147 N.M. 267, 219 P.3d 524 (agreeing with the *Baca* Court that, for compensation purposes, scheduled injuries and non-scheduled injuries are separate and distinct concepts whether they occurred during the initial workplace injury or developed later); *Baca*, 2002-NMCA-002, ¶¶ 14, 21, 24, 26 (agreeing with the worker that initial and subsequent physical injuries are separate and distinct concepts for purposes of compensation and that the duration of compensation for the subsequent non-scheduled shoulder injury is not limited to that for the initial scheduled knee injury); *Jaramillo v. Consol. Freightways*, 1990-NMCA-008, ¶ 9, 109 N.M. 712, 790 P.2d 509 (acknowledging that the worker had the right to petition for an increase in the workers' compensation award if his disability increased in a way that was causally related to the initial compensable injury)

[5]The arbitrariness of tethering the duration of benefits for secondary mental impairments to the duration of benefits for the initial physical impairment is further demonstrated in the example of a worker whose initial on-the-job injury results in multiple physical injuries, some scheduled, some non-scheduled. There is nothing in the Act which indicates which physical injury the benefits duration for a subsequent secondary mental impairment would be tethered to.

worker is entitled to benefits for the duration established for that subsequent physical impairment, regardless of whether the initial workplace injury was a scheduled or non-scheduled injury. The subsequent physical injury is assessed as a separate and distinct injury from the initial workplace injury. For example, if the initial workplace injury was to the knee but the subsequent physical impairment was to the shoulder, the duration of that worker's benefits for the non-scheduled shoulder injury is not limited to the 200-week cap on benefits for a scheduled knee injury. *See, e.g.*, *Baca*, 2002-NMCA-002, ¶ 21.

{16}     For these reasons, we conclude that Worker has met her burden to demonstrate that persons with secondary mental impairments are similarly situated to persons with subsequent physical impairments and that they are treated differently by the Workers' Compensation Act.

**B.     We Apply Intermediate Scrutiny to Classifications Based on Mental Disabilities**

{17}     Having established the presence of disparate treatment under Section 52-1-41(C) and Section 52-1-42(A)(4), we turn to what level of constitutional scrutiny should be applied to the disparate treatment created by those statutory provisions. Under the New Mexico Constitution, there are three levels of equal protection review: rational basis, intermediate scrutiny, and strict scrutiny. *Breen*, 2005-NMSC-028, ¶ 11. We apply intermediate scrutiny to classifications based on mental

disabilities because such persons are a sensitive class. *Id.* ¶ 28. "[I]ntermediate scrutiny is more probing than rational basis but less so than strict scrutiny." *Id.* ¶ 13.[6] When intermediate scrutiny applies, the burden is on the party supporting the legislation to prove its constitutionality. *Id.* ¶ 30. Under intermediate scrutiny, the party supporting the legislation must prove that the "discrimination caused by the legislation is substantially related to an important government interest." *Id.* ¶ 13 (internal quotation marks and citation omitted). Here, there is no challenge to the application of intermediate scrutiny. But we briefly highlight why intermediate scrutiny remains appropriate.

{18}  We discussed at length the history of classifications based on mental impairment in *Breen*. 2005-NMSC-028, ¶¶ 18-29. We acknowledged that the historical treatment of persons with mental disabilities makes clear that "courts should be sensitive to classes of people who are discriminated against not because of a characteristic that actually prevents them from functioning in society, but

---

[6]"Rational basis review applies to general social and economic legislation that does not affect a fundamental or important constitutional right or a suspect or sensitive class." *Breen*, 2005-NMSC-028, ¶ 11. "This standard of review is the most deferential to the constitutionality of the legislation." *Id.* Strict scrutiny requires the most exacting review and is applied only to legislation that "affects the exercise of a fundamental right or [affects] a suspect [class] such as race or ancestry." *Id.* ¶ 12 (internal quotation marks and citation omitted). Intermediate scrutiny occupies the middle ground. *Id.* ¶ 13.

because of external and artificial barriers created by societal prejudice." *Id.* ¶ 20. "Persons with mental disabilities have also suffered a history replete with societal discrimination and political exclusion based on a characteristic beyond their control." *Id.* ¶ 22. The stigma associated with mental illness remains potent. People of all ages, cultures, and socioeconomic conditions are adversely affected by this stigma, which may involve a combination of stereotypes, prejudices, and discrimination.[7] Antiquated biases and discriminatory practices continue to impede a person's access to health care for mental health conditions when no such impediments burden access to health care for medical or surgical conditions.[8] The

---

[7]*See* Graham Thornicroft et al., *The Lancet Commission on ending stigma and discrimination in mental health*, 400 The Lancet 1438 (2022) ("Stigma and discrimination contravene basic human rights and have severe, toxic effects on people with mental health conditions that exacerbate marginalisation and social exclusion.").

[8]*See* Dep't of Labor, Dep't of Health & Human Services, & Dep't of the Treasury, *2022 MHPAEA Report to Congress*, "Realizing Parity, Reducing Stigma and Raising Awareness: Increasing Access to Mental Health and Substance Use Disorder Coverage," at 6, https://www.dol.gov/sites/dolgov/files/EBSA/laws-and-regulations/laws/mental-health-parity/report-to-congress-2022-realizing-parity-reducing-stigma-and-raising-awareness.pdf (last visited March 27, 2024); *cf. id.* at 51 (The full promise of the Mental Health Parity and Addiction Equity Act of 2008 is to ensure that "Americans with [mental health and substance use disorder] coverage can access [mental health and substance use disorder] care that is not limited in any way that medical/surgical care is not.").

14

need for heightened scrutiny of laws that draw distinctions based on mental disabilities clearly persists. *See id.* ¶ 29.

## C. Employer Has Failed to Demonstrate That the Disparate Treatment Is Substantially Related to an Important Governmental Interest

{19} The Act treats subsequent physical impairments as separate and distinct injuries for compensation purposes but tethers compensation for secondary mental impairments to the initial physical workplace injury. *See* Section 52-1-41(C) and Section 52-1-42(A)(4). Employer must show that this disparate treatment is substantially related to an important governmental interest. *Breen*, 2005-NMSC-028, ¶ 30. In determining whether there is an important government interest justifying the disparate treatment, we "examine (1) the governmental interests served by the legislative classification, and (2) whether the classifications under the statute bear a substantial relationship to any such important interests." *Id*. (brackets, internal quotation marks, and citation omitted).

{20} Employer perplexingly focuses its argument justifying the disparate treatment on the proof requirements for primary and secondary mental impairments pursuant to Section 52-1-24 Relying solely on a legislative fiscal impact report, Employer argues the government has an interest in differentiating between primary and secondary mental impairments because "the system is intentionally designed to be formulaic" so that parties to a claim "are clear on what is expected of them." Fiscal

Impact Report for SB 233 at 2, 52nd Leg., 1st Sess. (N.M. 2015). But the question presented has nothing to do with the proof requirements for mental impairments. The parties have stipulated that Worker has a compensable secondary mental impairment. So this line of argument is unavailing. As we have previously observed, "How the disability was caused ceases to be important once a worker has been determined to have suffered a compensable injury." *Breen*, 2005-NMSC-028, ¶ 37. Employer's reliance on a legislative fiscal impact report is also misguided. Fiscal impact reports are not authoritative sources of legislative history; they are "only a forecast of the fiscal impact of the proposed bill." *Grisham v. Reeb*, 2021-NMSC-006, ¶ 33, 480 P.3d 852.

{21} We recognize that "preserving the financial viability of workers' compensation is important." *Breen*, 2005-NMSC-028, ¶¶ 34, 47. But Employer's generic, unsupported assertions of the need to contain costs do not justify disparate treatment. *See Rodriguez*, 2016-NMSC-029, ¶ 33; *see also id.* ¶ 34 (observing that if cost savings were allowed to be achieved through arbitrary means as the sole reason for disparate treatment, "cost containment alone could justify nearly every legislative enactment without regard for . . . equal protection." (omission in original) (internal quotation marks and citation omitted)). Here, Employer has not made even the barest showing that treating workers with secondary mental impairments the

same as workers with subsequent physical impairments for compensation purposes in any way jeopardizes the financial viability of our workers' compensation system. Most notably, Employer cannot point to any evidence in the record that the discriminatory treatment at issue bears any relationship to an important governmental interest, much less a substantial relationship to such an interest. *See Breen*, 2005-NMSC-028, ¶ 30; *cf. Rodriguez*, 2016-NMSC-029, ¶¶ 25, 28, 33 (recognizing, even under our most deferential rational relation standard of review where a lower burden is on the party challenging the constitutionality of legislation, that lack of record evidence is fatal to the claim that legislation is rationally related to a legitimate government purpose). In a nutshell, Employer's constitutional argument is unsupported, undeveloped, and lacks any principled analysis, and we need not consider it. *See Nguyen v. Bui*, 2023-NMSC-020, ¶¶ 19-20, 536 P.3d 482 (cautioning that this Court does not consider incomplete and unsupported constitutional arguments); *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (reminding the petitioner that this Court does not review unclear arguments or guess at what those might be). Accordingly, Employer has failed to meet its burden to demonstrate that the disparate treatment occasioned by Section 52-1-41(C) and Section 52-1-42(A)(4) of the Workers' Compensation Act is substantially related to any important governmental interest.

17

**D. The Disparate Treatment Occasioned by Section 52-1-41(C) and Section 52-1-42(A)(4) Is Contrary to the Purposes of the Workers' Compensation Act**

{22} In closing, we stress that the disparate treatment imposed on workers with mental impairments compared to workers with physical impairments is contrary to the purposes of the Act. The Act compensates workers for lost earning capacity, which protects New Mexico's social welfare system and "shifts the burden of protecting workers onto industry." *Breen*, 2005-NMSC-028, ¶¶ 37, 48. The Act is also a worker's "exclusive remedy" for on-the-job injuries since workers lose any common law negligence claims they otherwise may have had. *Id.* ¶ 38; *see* NMSA 1978, § 52-1-6(C)-(E) (1990). Both mentally disabled workers and physically disabled workers are impaired in their capacities to perform work. A mental disability compensable under the Act affects workers in the same way as a compensable physical disability does by preventing them from earning a wage because of an on-the-job accident. *Breen*, 2005-NMSC-028, ¶ 48. The idea that mentally disabled workers may be entitled to recover less compensation than physically disabled workers is contrary to the purposes of the Act, which guide our equal protection analysis. "[S]everely limiting compensation for mental injuries does not substantially further" the goals of the Workers' Compensation Act. *Id.* This

18

compels us to reject Employer's convoluted argument to interpret the Act in a manner that would be contrary to those purposes.

**V.  CONCLUSION**

{23}  For the reasons stated above, we hold that Section 52-1-41(C) and Section 52-1-42(A)(4) violate the equal protection clause of the New Mexico Constitution. We affirm the Court of Appeals.

{24}  **IT IS SO ORDERED.**

_____
**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**JULIE J. VARGAS, Justice**

19